# EXHIBIT A-2

4/10/2024 12:27 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 86500155
By: Cynthia Clausell-McGowan
Filed: 4/10/2024 12:27 PM

CAUSE NO. _____

| | | |
|---|---|---|
| CONSTANCE MILLARD and | § | IN THE DISTRICT COURT |
| GERALD KRELL, Individually and as | § | |
| Representatives of the Estate of Jason | § | |
| Krell, Deceased; MICHELLE MARTIN, | § | |
| as tutrix and next friend of A.P., E.P., and | § | |
| M.S., minors, and as Representative of the | § | |
| Estate of Quinon Pitre | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| AMERICAN BUREAU OF SHIPPING, | § | |
| ABS GROUP OF COMPANIES, INC. | § | |
| ABSG CONSULTING INC., | § | |
| ABS QUALITY EVALUATIONS, INC., | § | |
| and ABS GROUP | § | _____ JUDICIAL DISTRICT |

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Plaintiffs Constance Millard and Gerald Krell, each Individually and as Representatives of the Estate of Jason Krell, Deceased; and Michelle Martin, as tutrix and next friend of A.P., E.P., and M.S., minors, and as Representative of the Estate of Quinon Pitre ("Plaintiffs"), complaining of Defendants American Bureau of Shipping, ABS Group of Companies, Inc., ABSG Consulting Inc., ABS Quality Evaluations, Inc., and ABS Group (collectively "ABS"), and for cause of action, would respectfully show this Honorable Court as follows:

## I. DISCOVERY CONTROL PLAN

1.1     Plaintiffs intend to conduct discovery under Level 3 of Texas Rule of Civil Procedure 190.4.

1.2     Plaintiffs affirmatively plead this suit does not fall under the expedited-actions process of Texas Rule of Civil Procedure because Plaintiffs are seeking monetary relief in excess of $250,000.

## II. PARTIES

2.1     Plaintiff Constance Millard is a citizen and resident of Texas.  Constance Millard is the mother of Jason Krell, deceased.

2.2     Plaintiff Gerald Krell is a citizen and resident of Texas.  Gerald Krell is the father of Jason Krell, deceased.   Constance Millard and Gerald Krell bring their claims individually and as Representative of the Estate of Jason Krell, their deceased son.

2.3     Plaintiff Michelle Martin is a citizen and resident of Louisiana, and brings this claim as tutrix and next friend of A.P., E.P. and M.S., the minor daughters of Quinon Pitre, and as Representative of the Estate of Quinon Pitre.

2.4     All of the Decedents were Jones Act seamen at the time of their death.

2.5     Defendant American Bureau of Shipping is a foreign corporation and citizen of Texas, with its principal place of business and headquarters in Harris County, Texas, doing business in the state of Texas for the purpose of accumulating monetary profit, and may be served with process through its registered agent, Prentice Hall Corp System, 211 E. 7th Street, Suite 620 Austin, TX 78701.

2.6     Defendant ABS Group of Companies, Inc. is a foreign corporation and citizen of Texas, with its principal place of business and headquarters in Harris County, Texas, doing business in the state of Texas for the purpose of accumulating monetary profit, and may be served through its registered agent, Corp Service Co d/b/a CSC-Lawyers Inc., 211 E. 7th Street, Suite 620 Austin, TX 78701.

2.7     Defendant ABSG Consulting Inc. is a foreign corporation and citizen of Texas, with its principal place of business and headquarters in Harris County, Texas, doing business in the state

2

of Texas for the purpose of accumulating monetary profit, and may be served with process through its registered agent, Prentice Hall Corp System, 211 E. 7th Street, Suite 620 Austin, TX 78701.

2.8     Defendant ABS Quality Evaluations, Inc. is a foreign corporation and citizen of Texas, with its principal place of business and headquarters in Harris County, Texas, doing business in the state of Texas for the purpose of accumulating monetary profit, and may be served with process through its registered agent, Prentice Hall Corp System, 211 E. 7th Street, Suite 620 Austin, TX 78701-3218.

2.9     Defendant ABS Group is an assumed and/or former name of ABSG Consulting Inc. under which all of the Defendants conduct business, with its principal place of business and headquarters in Harris County, Texas, doing business in the state of Texas for the purpose of accumulating monetary profit.  This Defendant may be served with process by serving ABSG Consulting Inc.'s registered agent, Prentice Hall Corp System, 211 E. 7th Street, Suite 620 Austin, TX 78701.

2.10     Plaintiffs specifically invoke the right to institute this suit against whatever entities were conducting business using an assumed or common name, if any, with regard to the events described in this Petition. Plaintiffs specifically invoke the right under Rule 28, Texas Rules of Civil Procedure, to have the true name of such parties substituted at a later time, if necessary.

### III. JURISDICTION

3.1     This claim is maintained under the general maritime law of the United States.  This Court has jurisdiction pursuant to the Saving to Suitors clause.  This Court also has jurisdiction over this case because Defendants systematically conduct business in the State of Texas.  The damages sought herein are in excess of the minimal jurisdictional limits of this Court.

3

3.2     It is well-established that cases brought under the general maritime law and the Savings to Suitors Clause are not removable to federal court.  Moreover, it is not removable as the principal place of business and citizenship of all Defendants is Texas.

## IV.  VENUE

4.1     Venue of this lawsuit is proper in Houston, Harris County, Texas pursuant to Texas Civil Practice and Remedies Code Section 15.002 in that Harris County is the principal place of business for one or more defendants.

## V.  FACTUAL BACKGROUND

5.1     This lawsuit arises out of the deadly sinking of the *SEACOR Power*, the vessel to which the Decedents were assigned and on which they would ultimately lose their lives.

5.2     Sometime after 3 p.m. on April 13, 2021, the vessel left Port Fourchon, Louisiana, before it was overtaken by a rain squall.  A second squall about 10 minutes later caused "white out" conditions.  The crew began to lower the vessel's 265-foot-long legs to the seafloor to allow the vessel to ride out the storm. During the leg-lowering process, the *SEACOR Power* turned into the wind to slow its speed.  As the vessel turned, it heeled over and capsized at around 3:57 p.m.  All the Decedents in this lawsuit lost their lives as a result of the vessel's capsizing.

5.3     After investigating the incident, the National Transportation Safety Board ("NTSB") determined the probable cause of the capsizing of the *SEACOR Power* was a loss of stability that occurred when the vessel was struck by severe thunderstorm winds.  Contributing to the loss of life on the vessel were the speed at which the vessel capsized and the angle at which it came to rest, which made egress difficult in the aftermath of the capsizing.

5.4     ABS, one of several non-governmental classification societies that establish and maintain standards for the construction and operation of ships, classified the *SEACOR Power*.  In

4

addition to publishing and enforcing classification rules, ABS also provides technical requirements for offshore vessels and vessel safety.  Part of ABS's responsibility is to inspect the vessels it classifies, and identify hazards onboard those vessels, before tragedies like this one occur.  ABS even has the ability to withhold classification or require appropriate remedial measures to rectify deficiencies in the vessels it classifies.

5.5     However, ABS had more involvement than simply classing the vessel involved in this incident.  ABS reviewed plans and documentation before and during construction, and, throughout the build period, ABS surveyed the vessel and witnessed critical testing.  Upon completion, ABS issued the *SEACOR Power* (then known as the *Dixie Endeavor*) a certificate of classification as a liftboat.  ABS's involvement continued over the vessel's almost twenty years of operation.  To maintain a valid certificate of classification, the *SEACOR Power* was required to undergo annual surveys completed by ABS; special surveys at intervals of 5 years; drydocking surveys, held twice in a 5-year period; and surveys for damages or repairs, as needed.

5.6     Other surveys were also completed by ABS on behalf of the Coast Guard, including surveys verifying compliance with the *International Load Line Certificate, the International Convention for the Safety of Life at Sea* (SOLAS), and the *International Convention for the Prevention of Pollution from Ships*. For efficiency, several different surveys were often completed by the attending surveyors during the same visit to the vessel.

5.7     The IMO International Safety Management Code (ISM Code) requires that vessel operators implement a Safety Management System (SMS).  Per the ISM Code, the flag state—the nation where a vessel is registered—must verify and certify that a company and vessel are complying with the provisions of the code.  ABS was delegated responsibility by the United States for verifying that SEACOR Marine and the *SEACOR Power* were in compliance with the ISM Code and US

5

regulations.  For instance, between March 18 and 25, 2021, ABS conducted a renewal audit to confirm that SEACOR Marine had an SMS that met the intent of the ISM Code.  The auditors did not find any nonconformities, and, on behalf of the Coast Guard, ABS issued SEACOR Marine a document of compliance with an expiration date of April 19, 2026.

5.8     On June 9, 2020, ABS conducted a safety management certificate audit for the *SEACOR Power* to confirm that the company and its shipboard management operated the vessel in accordance with the approved SMS.  ABS endorsed the safety management certificate valid until June 13, 2022.

5.9     In addition to audits by the flag state or recognized organization (such as a classification society), the ISM Code requires annual internal audits to validate compliance.  The last internal audit of SEACOR Marine was conducted on January 29, 2021, with no outstanding discrepancies.  The last internal audit of the *SEACOR Power* began on March 29, 2021, also with no discrepancies or non-conformities found by ABS, although the mate and SEACOR Marine Quality, Health, Safety, and Environment superintendent have admitted that, on the day of the capsizing, supplemental documentation was still being collected and not in the possession of ABS at the time of the internal audit.

5.10    During the internal audit, the company auditor verified that stability calculations were conducted based on a sample loading condition dated November 14, 2020.  The auditor noted in the record of the audit that stability was "calculated on '*Dixie Endeavor*' sheet."  The company could not provide a copy of the sample calculations when requested by investigators after the tragic incident occurred.  A report from the previous year's internal audit, conducted on April 9, 2020, also noted that stability was calculated using the "*Dixie Endeavor* Stability program."  Despite the

6

vessel's having based stability calculations on testing performed prior to numerous changes made to the vessel's design, layout, purpose, and use, the vessel still passed ABS's audit.

5.11    In addition to the SMS and Marine Operations Manual, the *SEACOR Power* also had a Cargo Securing Manual approved by ABS.  The manual provided guidance for crews for stowing and securing different types of cargo to prevent them from sliding or toppling.

5.12    ABS failed to perform adequate inspections, audits, reviews, and classification of the *SEACOR Power*, and rubber-stamped the vessel, its components, its operations manual, its safety policies, and its safety management system when it was not safe to operate.

5.13    ABS was involved in the vessel from its birth until its untimely death as it sank into the waters off the coast of Louisiana.  ABS had dozens of opportunities to prevent this tragic incident, yet each time failed to do so.  The crew and their families paid the ultimate price for ABS's failure.

## VI.  CAUSES OF ACTION

### A.    Negligence

6.1    ABS was negligent in its inspection, review, audit and classification of the vessel *SEACOR Power.*  ABS inspected and approved the vessel for use despite obvious dangerous and unsafe characteristics of the vessel.  ABS approved the vessel's components, its operations manual, its safety policies, and its safety management system when it was not safe to operate

6.2    ABS owed the Decedents a duty to exercise ordinary care.

6.3    The injuries and deaths of the Decedents and resultant damages sustained by Plaintiffs were proximately caused by the negligence of ABS, including without limitation, one or more of the following acts:

(a)    failing to ensure the safety of workers aboard the vessel;

(b)   failing to properly assess the vessel;

(c)   failing to properly audit the vessel;

(d)   failing to properly inspect the vessel;

(e)   failing to properly certify the vessel;

(f)   approving the vessel's safety manual despite its deficiencies;

(g)   failing to ensure the vessel was meeting class certification standards;

(h)   failing to ensure the vessel met necessary stability requirements;

(i)   failing to properly train its employees and/or contractors;

(j)   failing to implement sufficient policies and procedures to have prevented this tragedy;

(k)   failing to identify inadequacies in Seacor Marine's safety management system;

(l)   failing to identify inadequacies in the vessel's marine operating manual;

(m)   violating its own safety rules, policies, standards, and regulations; and,

(n)   other acts of negligence and/or omissions to be shown at trial herein.

6.4   ABS conducted its testing, audits, inspections, and other work, in a negligent and unreasonable manner, and ABS's negligence was a direct, proximate, and producing cause of injury and death to the Decedents, and resultant damages to Plaintiffs.

**B.   Negligent Misrepresentation**

6.5   ABS was negligent in its inspection, review, and classification of the vessel *SEACOR Power.*  ABS inspected and approved the vessel for use despite obvious dangerous and unsafe characteristics of the vessel.

6.6   ABS negligently misrepresented the qualities, characteristics and seaworthiness of the Vessel to the detriment of the Decedents and crew members when ABS knew or reasonably

8

should have known that the Decedents and crew members would rely upon the representations.  By serving aboard the Vessel, the Decedents and crew members relied upon the ABS certifications and approvals to their detriment.  The Decedents and crew members in this lawsuit relied on ABS to properly conduct its classification, its approval of the design of the vessel, its approval of the Marine Operating Manual, its approval of the vessel's components, its approval of the vessel's safety policies and other policies, its approval of the vessel's stability calculations, and its approval of the vessel's safety management system when it was not safe to operate and its subsequent inspections and surveys and other work that occurred.  Specifically, the Plaintiffs relied on the false impression created by ABS that the vessel was safe for everyone on board.

6.7     ABS failed to exercise reasonable care in gathering the information.

6.8     As workers who were present on the vessel, ABS knew or should have expected that they would be put in peril by the negligent acts and omissions of ABS, as asserted herein.

**C.     Gross Negligence**

6.9     Defendants' acts and/or omissions rose to the level of gross negligence and warrant the imposition of exemplary damages.  Defendants were well aware of the risk of harm to Decedents and the crew members on the vessel, yet exhibited conscious indifference to their rights, which proximately caused the injuries and death, and resultant damages complained of herein.

## VII.  DAMAGES

7.1     As a result of Defendants' acts and omissions, Plaintiffs have all lost a loved one and have been made to suffer and sustain significant damages.  The Decedents each suffered unspeakable fear, terror, and pain–then lost their lives.  The amount of monetary relief sought is within the sole discretion of the trier of fact, who will consider the evidence and decide what amount will

9

compensate said Plaintiffs for Defendants' acts and omissions. Plaintiffs seek all damages allowed by law for wrongful death and survival actions.

7.2     Defendants proximately caused injury and death to Jason Krell, which resulted in the following damages, among others, to the Estate of Jason Krell: (a) physical pain in the past; (b) mental anguish in the past; (c) disfigurement in the past; (d) physical impairment in the past; (e) medical expenses in the past; (f) loss of earnings and loss of future earning capacity; (g) burial expenses; and  (h) exemplary and punitive damages.

7.3     Defendants proximately caused injury and death to Jason Krell, which resulted in the following damages, among others, to Plaintiff Constance Millard: (a) loss of companionship and guidance in the past and future; (b) mental anguish in the past and future; (c) loss of earning capacity in the past and future; (d) loss of love, affection, care, attention, and consortium in the past and future; (e) loss of household services in the past and future; and (f) exemplary and punitive damages.

7.4     Defendants proximately caused injury and death to Jason Krell, which resulted in the following damages, among others, to Plaintiff Gerald Krell: (a) loss of companionship and guidance in the past and future; (b) mental anguish in the past and future; (c) loss of earning capacity in the past and future; (d) loss of love, affection, care, attention, and consortium in the past and future; (e) loss of household services in the past and future; and (f) exemplary and punitive damages.

7.5     Defendants proximately caused injury and death to Quinon Pitre, which resulted in the following damages, among others, to the Estate of Quinon Pitre: (a) physical pain in the past; (b) mental anguish in the past; (c) disfigurement in the past; (d) physical impairment in the past; (e) medical expenses in the past; (f) loss of earnings and loss of future earning capacity; (g) burial expenses; and  (h) exemplary and punitive damages.

7.6     Defendants proximately caused injury and death to Quinon Pitre, which resulted in the following damages, among others, to the minor A.P.: (a) loss of companionship and guidance in the past and future; (b) mental anguish in the past and future; (c) loss of earning capacity in the past and future; (d) loss of love, affection, care, attention, and consortium in the past and future; (e) loss of household services in the past and future; and (f) exemplary and punitive damages.

7.7     Defendants proximately caused injury and death to Quinon Pitre, which resulted in the following damages, among others, to the minor E.P.: (a) loss of companionship and guidance in the past and future; (b) mental anguish in the past and future; (c) loss of earning capacity in the past and future; (d) loss of love, affection, care, attention, and consortium in the past and future; (e) loss of household services in the past and future; and (f) exemplary and punitive damages.

7.8     Defendants proximately caused injury and death to Quinon Pitre, which resulted in the following damages, among others, to the minor M.S.: (a) loss of companionship and guidance in the past and future; (b) mental anguish in the past and future; (c) loss of earning capacity in the past and future; (d) loss of love, affection, care, attention, and consortium in the past and future; (e) loss of household services in the past and future; and (f) exemplary and punitive damages.

7.9     Plaintiffs seek all damages allowed by law.

7.10    Plaintiffs seek in excess of $100,000,000.00 and exemplary damages in the conscience of the trier of fact to deter such conscious indifference to human life and suffering and to deter corporations placing corporate profits, money, and power over the lives of hardworking Americans.

## VIII.  CLAIM FOR RELIEF

8.1     Pursuant to Tex. R. Civ. P. 47(c)(4), Plaintiffs are seeking monetary relief over $1,000,000.

11

WHEREFORE, Plaintiffs pray the Court issue citation for Defendants to appear and answer, and that Plaintiff be awarded judgment against Defendants, for the following:

a.   Actual damages;
b.   Exemplary damages;
c.   Prejudgment and postjudgment interest;
d.   Court costs;
e.   Punitive damages and attorney's fees; and
f.   All other relief to which Plaintiffs are entitled.

Respectfully submitted,

/s/ Marcus R. Spagnoletti
Marcus R. Spagnoletti
TX SBN 24076708
mspagnoletti@spaglaw.com
Eric J. Rhine
TX SBN 24060485
erhine@spaglaw.com
SPAGNOLETTI LAW FIRM
401 Louisiana Street, 8th Floor
Houston, Texas 77002
Telephone:      (713) 653-5600
Facsimile:      (713) 653-5656

ATTORNEYS FOR PLAINTIFFS

4/12/2024 3:08 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 86612288
By: Tammy Tolman
Filed: 4/12/2024 3:08 PM

CAUSE NO. 2024-22725

| | | |
|---|---|---|
| CONSTANCE MILLARD and | § | IN THE DISTRICT COURT |
| GERALD KRELL, Individually and as | § | |
| Representatives of the Estate of Jason | § | |
| Krell, Deceased; MICHELLE MARTIN, | § | |
| as tutrix and next friend of A.P., E.P., and | § | |
| M.S., minors, and as Representative of the | § | |
| Estate of Quinon Pitre | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| AMERICAN BUREAU OF SHIPPING, | § | |
| ABS GROUP OF COMPANIES, INC. | § | |
| ABSG CONSULTING INC., | § | |
| ABS QUALITY EVALUATIONS, INC., | § | |
| and ABS GROUP | § | 190TH JUDICIAL DISTRICT |

**PLAINTIFFS' FIRST AMENDED PETITION**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Plaintiffs Constance Millard, Individually and as Representative of the Estate

of Jason Krell; Gerald Krell; Michelle Martin, as tutrix and next friend of A.P., E.P., and M.S.,

minors, and as Representative of the Estate of Quinon Pitre; Rathey Encalade, Individually and as

Independent Administratrix of the Succession of Darren Anthony Encalade, Sr.; Cameron Encalade;

Janet Hartford, Individually and as Administratrix of the Succession of Anthony Hartford; Antranae

Hartford; Amanda Walcott-Harris and Russell Wayne Saddler as Independent Co-Administratrixes

of the Succession of Gregory Walcott; Brandy Williams Norris, as Administrator of the Succession

of Ernest J. Williams, Jr.; Verley Williams; Bryson Williams; Zachary Louviere; Charles Scallan;

and Brandon Aucoin (collectively "Plaintiffs"), complaining of Defendants American Bureau of

Shipping, ABS Group of Companies, Inc., ABSG Consulting Inc., ABS Quality Evaluations, Inc.,

and ABS Group (collectively "ABS"), and for cause of action, would respectfully show this

Honorable Court as follows:

## I.  DISCOVERY CONTROL PLAN

1.1      Plaintiffs intend to conduct discovery under Level 3 of Texas Rule of Civil Procedure 190.4.

1.2      Plaintiffs affirmatively plead this suit does not fall under the expedited-actions process of Texas Rule of Civil Procedure because Plaintiffs are seeking monetary relief in excess of $250,000.

## II.  PARTIES

2.1      Plaintiff Constance Millard is a citizen and resident of Texas, and brings this claim Individually and as Representative of the Estate of Jason Krell, her deceased son.

2.2      Plaintiff Gerald Krell is a citizen and resident of Texas, and is the father of Jason Krell, deceased.

2.3      Plaintiff Michelle Martin is a citizen and resident of Louisiana, and brings this claim as tutrix and next friend of A.P., E.P. and M.S., the minor daughters of Quinon Pitre, and as Representative of the Estate of Quinon Pitre.

2.4      Plaintiff Rathey Encalade is a citizen and resident of Louisiana, and brings this claim Individually and as Independent Administratrix of the Succession of Darren Anthony Encalade, Sr., her deceased husband.

2.5      Plaintiff Cameron Encalade is a citizen and resident of Louisiana, and the son of Darren Anthony Encalade, Sr., deceased.

2.6      Plaintiff Janet Hartford is a citizen and resident of Louisiana, and brings this claim Individually and as Administratrix of the Succession of Anthony Hartford, her deceased husband.

2

2.7    Plaintiff Antranae Hartford is a citizen and resident of Texas, and the daughter of Anthony Hartford, deceased.

2.8    Plaintiffs Amanda Walcott-Harris and Russell Wayne Saddler are citizens and residents of Louisiana, and bring this claim as Independent Co-Administratrixes of the Succession of Gregory Walcott.

2.9    Plaintiff Brandy Williams Norris is a citizen and resident of Louisiana, and brings this claim as Administrator of the Succession of Ernest J. Williams, Jr.

2.10    Verley Williams is a citizen and resident of Louisiana, and the surviving spouse of Ernest J. Williams, Jr.

2.11    Bryson Williams is a citizen and resident of Louisiana, and the son of Ernest J. Williams, Jr.

2.12    Plaintiff Zachary Louviere is a citizen and resident of Louisiana.

2.13    Plaintiff Charles Scallan is a citizen and resident of Louisiana.

2.14    Plaintiff Brandon Aucoin is a citizen and resident of Louisiana.

2.15    Jason Krell, Quinon Pitre, Darren Anthony Encalade, Sr., Anthony Hartford, Gregory Walcott and Ernest J. Williams, Jr. all lost their lives during the deadly sinking of the *SEACOR Power*.  These men who paid the ultimate price will be collectively referred to as "Decedents."

2.16    Zachary Louviere, Charles Scallan and Brandon Aucoin survived the sinking of the *SEACOR Power*, sustaining both physical injuries and unimaginable pain and suffering, mental anguish, and survivor's guilt as a result of what they experienced.  These men will be collectively referred to as "Survivors."

2.17    All of the Decedents and Survivors were Jones Act seamen at the time of their death.

3

2.18    Defendant American Bureau of Shipping is a foreign corporation and citizen of Texas, with its principal place of business and headquarters in Harris County, Texas, doing business in the state of Texas for the purpose of accumulating monetary profit, and may be served with process through its registered agent, Prentice Hall Corp System, 211 E. 7th Street, Suite 620 Austin, TX 78701.

2.19    Defendant ABS Group of Companies, Inc. is a foreign corporation and citizen of Texas, with its principal place of business and headquarters in Harris County, Texas, doing business in the state of Texas for the purpose of accumulating monetary profit, and may be served through its registered agent, Corp Service Co d/b/a CSC-Lawyers Inc., 211 E. 7th Street, Suite 620 Austin, TX 78701.

2.20    Defendant ABSG Consulting Inc. is a foreign corporation and citizen of Texas, with its principal place of business and headquarters in Harris County, Texas, doing business in the state of Texas for the purpose of accumulating monetary profit, and may be served with process through its registered agent, Prentice Hall Corp System, 211 E. 7th Street, Suite 620 Austin, TX 78701.

2.21    Defendant ABS Quality Evaluations, Inc. is a foreign corporation and citizen of Texas, with its principal place of business and headquarters in Harris County, Texas, doing business in the state of Texas for the purpose of accumulating monetary profit, and may be served with process through its registered agent, Prentice Hall Corp System, 211 E. 7th Street, Suite 620 Austin, TX 78701-3218.

2.22    Defendant ABS Group is an assumed and/or former name of ABSG Consulting Inc. under which all of the Defendants conduct business, with its principal place of business and headquarters in Harris County, Texas, doing business in the state of Texas for the purpose of accumulating monetary profit.  This Defendant may be served with process by serving ABSG

4

Consulting Inc.'s registered agent, Prentice Hall Corp System, 211 E. 7th Street, Suite 620 Austin, TX 78701.

2.23    Plaintiffs specifically invoke the right to institute this suit against whatever entities were conducting business using an assumed or common name, if any, with regard to the events described in this Petition.  Plaintiffs specifically invoke the right under Rule 28, Texas Rules of Civil Procedure, to have the true name of such parties substituted at a later time, if necessary.

### III.  JURISDICTION

3.1    This claim is maintained under the general maritime law of the United States.  This Court has jurisdiction pursuant to the Saving to Suitors clause.  This Court also has jurisdiction over this case because Defendants systematically conduct business in the State of Texas.  The damages sought herein are in excess of the minimal jurisdictional limits of this Court.

3.2    It is well-established that cases brought under the general maritime law and the Savings to Suitors Clause are not removable to federal court.  Moreover, it is not removable as the principal place of business and citizenship of all Defendants is Texas.

### IV.  VENUE

4.1    Venue of this lawsuit is proper in Houston, Harris County, Texas pursuant to Texas Civil Practice and Remedies Code Section 15.002 in that Harris County is the principal place of business for one or more defendants.

### V.  FACTUAL BACKGROUND

5.1    This lawsuit arises out of the deadly sinking of the *SEACOR Power*, the vessel on which the Decedents and Survivors were all on at the time of its demise.

5.2    Sometime after 3 p.m. on April 13, 2021, the vessel left Port Fourchon, Louisiana, before it was overtaken by a rain squall.  A second squall about 10 minutes later caused "white out"

conditions.  The crew began to lower the vessel's 265-foot-long legs to the seafloor to allow the vessel to ride out the storm.  During the leg-lowering process, the *SEACOR Power* turned into the wind to slow its speed.  As the vessel turned, it heeled over and capsized at around 3:57 p.m.  All the Decedents in this lawsuit lost their lives as a result of the vessel's capsizing.  The Survivors sustained injuries as a result of the vessel's capsizing and their struggle for survival.

5.3     After investigating the incident, the National Transportation Safety Board ("NTSB") determined the probable cause of the capsizing of the *SEACOR Power* was a loss of stability that occurred when the vessel was struck by severe thunderstorm winds.  Contributing to the loss of life on the vessel were the speed at which the vessel capsized and the angle at which it came to rest, which made egress difficult in the aftermath of the capsizing.

5.4     ABS, one of several non-governmental classification societies that establish and maintain standards for the construction and operation of ships, classified the *SEACOR Power*.  In addition to publishing and enforcing classification rules, ABS also provides technical requirements for offshore vessels and vessel safety.  Part of ABS's responsibility is to inspect the vessels it classifies, and identify hazards onboard those vessels, before tragedies like this one occur.  ABS even has the ability to withhold classification or require appropriate remedial measures to rectify deficiencies in the vessels it classifies.

5.5     However, ABS had more involvement than simply classing the vessel involved in this incident.  ABS reviewed plans and documentation before and during construction, and, throughout the build period, ABS surveyed the vessel and witnessed critical testing.  Upon completion, ABS issued the *SEACOR Power* (then known as the *Dixie Endeavor*) a certificate of classification as a liftboat.  ABS's involvement continued over the vessel's almost twenty years of operation.  To maintain a valid certificate of classification, the *SEACOR Power* was required to undergo annual

6

surveys completed by ABS; special surveys at intervals of 5 years; drydocking surveys, held twice in a 5-year period; and surveys for damages or repairs, as needed.

5.6     Other surveys were also completed by ABS on behalf of the Coast Guard, including surveys verifying compliance with the *International Load Line Certificate, the International Convention for the Safety of Life at Sea* (SOLAS), and the *International Convention for the Prevention of Pollution from Ships*.  For efficiency, several different surveys were often completed by the attending surveyors during the same visit to the vessel.

5.7     The IMO International Safety Management Code (ISM Code) requires that vessel operators implement a Safety Management System (SMS).  Per the ISM Code, the flag state—the nation where a vessel is registered—must verify and certify that a company and vessel are complying with the provisions of the code.  ABS was delegated responsibility by the United States for verifying that SEACOR Marine and the *SEACOR Power* were in compliance with the ISM Code and US regulations.  For instance, between March 18 and 25, 2021, ABS conducted a renewal audit to confirm that SEACOR Marine had an SMS that met the intent of the ISM Code.  The auditors did not find any nonconformities, and on behalf of the Coast Guard, ABS issued SEACOR Marine a document of compliance with an expiration date of April 19, 2026.

5.8     On June 9, 2020, ABS conducted a safety management certificate audit for the *SEACOR Power* to confirm that the company and its shipboard management operated the vessel in accordance with the approved SMS.  ABS endorsed the safety management certificate valid until June 13, 2022.

5.9     In addition to audits by the flag state or recognized organization (such as a classification society), the ISM Code requires annual internal audits to validate compliance.  The last internal audit of SEACOR Marine was conducted on January 29, 2021, with no outstanding

discrepancies.  The last internal audit of the *SEACOR Power* began on March 29, 2021, also with no discrepancies or non-conformities found by ABS, although the mate and SEACOR Marine Quality, Health, Safety, and Environment superintendent have admitted that, on the day of the capsizing, supplemental documentation was still being collected and not in the possession of ABS at the time of the internal audit.

5.10    During the internal audit, the company auditor verified that stability calculations were conducted based on a sample loading condition dated November 14, 2020.  The auditor noted in the record of the audit that stability was "calculated on '*Dixie Endeavor*' sheet."  The company could not provide a copy of the sample calculations when requested by investigators after the tragic incident occurred.  A report from the previous year's internal audit, conducted on April 9, 2020, also noted that stability was calculated using the "*Dixie Endeavor* Stability program."  Despite the vessel's having based stability calculations on testing performed prior to numerous changes made to the vessel's design, layout, purpose, and use, the vessel still passed ABS's audit.

5.11    In addition to the SMS and Marine Operations Manual, the *SEACOR Power* also had a Cargo Securing Manual approved by ABS.  The manual provided guidance for crews for stowing and securing different types of cargo to prevent them from sliding or toppling.

5.12    ABS failed to perform adequate inspections, audits, reviews, and classification of the *SEACOR Power*, and rubber-stamped the vessel, its components, its operations manual, its safety policies, and its safety management system when it was not safe to operate.

5.13    ABS was involved in the vessel from its birth until its untimely death as it sank into the waters off the coast of Louisiana.  ABS had dozens of opportunities to prevent this tragic incident, yet each time failed to do so.  The crew and their families paid the ultimate price for ABS's failure.

8

## VI.  CAUSES OF ACTION

**A.      Negligence**

6.1     ABS was negligent in its inspection, review, audit and classification of the vessel *SEACOR Power.*  ABS inspected and approved the vessel for use despite obvious dangerous and unsafe characteristics of the vessel.  ABS approved the vessel's components, its operations manual, its safety policies, and its safety management system when it was not safe to operate.

6.2     ABS owed the Decedents and Survivors a duty to exercise ordinary care.

6.3     The injuries and deaths of the Decedents, and injuries to the Survivors, and resultant damages sustained by Plaintiffs were proximately caused by the negligence of ABS, including without limitation, one or more of the following acts:

(a)     failing to ensure the safety of workers aboard the vessel;

(b)     failing to properly assess the vessel;

(c)     failing to properly audit the vessel;

(d)     failing to properly inspect the vessel;

(e)     failing to properly certify the vessel;

(f)     approving the vessel's safety manual despite its deficiencies;

(g)     failing to ensure the vessel was meeting class certification standards;

(h)     failing to ensure the vessel met necessary stability requirements;

(i)     failing to properly train its employees and/or contractors;

(j)     failing to implement sufficient policies and procedures to have prevented this tragedy;

(k)     failing to identify inadequacies in SEACOR Marine's safety management system;

(l)     failing to identify inadequacies in the vessel's marine operating manual;

(m)    failing to identify inadequacies in the Vessel's safety, procedures, operating, and cargo securing manuals, amongst others;

(n)    violating its own safety rules, policies, standards, and regulations; and,

(o)    other acts of negligence and/or omissions to be shown at trial herein.

6.4    ABS conducted its testing, audits, inspections, and other work, in a negligent and unreasonable manner, and ABS's negligence was a direct, proximate, and producing cause of injury and death to the Decedents, and injuries to the Survivors, and resultant damages to Plaintiffs.

**B.    Negligent Misrepresentation**

6.5    ABS was negligent in its inspection, review, and classification of the vessel *SEACOR Power.*  ABS inspected and approved the vessel for use despite obvious dangerous and unsafe characteristics of the vessel.

6.6    ABS negligently misrepresented the qualities, characteristics and seaworthiness of the Vessel to the detriment of the Decedents and Survivors when ABS knew or reasonably should have known that the Decedents and Survivors would rely upon the representations.  By serving aboard the Vessel, the Decedents and Survivors relied upon the ABS certifications and approvals to their detriment.  The Decedents and Survivors in this lawsuit relied on ABS to properly conduct its classification, its approval of the design of the vessel, its approval of the Marine Operating Manual, its approval of the vessel's components, its approval of the vessel's safety policies and other policies, its approval of the vessel's stability calculations, and its approval of the company's safety management system when it was not safe to operate and its subsequent inspections and surveys and other work that occurred.  Specifically, the Decedents and Survivors relied on the false impression created by ABS that the vessel was safe for everyone on board.

6.7    ABS failed to exercise reasonable care in gathering the information.

10

6.8     As workers who were present on the vessel, ABS knew or should have expected that Decedents and Survivors would be put in peril by the negligent acts and omissions of ABS, as asserted herein.

**C.     Gross Negligence**

6.9     Defendants' acts and/or omissions rose to the level of gross negligence and warrant the imposition of exemplary damages.  Defendants were well aware of the risk of harm to Decedents and the Survivors on the vessel, yet exhibited conscious indifference to their rights, which proximately caused the injuries and deaths to those on board the vessel, and resultant damages complained of herein.

## VII.  DAMAGES

7.1     As a result of Defendants' acts and omissions, Plaintiffs have either lost loved ones and have been made to suffer and sustain significant damages, or suffered physical and emotional injuries as survivors of this deadly incident.  The Decedents each suffered unspeakable fear, terror, and pain–then lost their lives; the Survivors each suffered unspeakable fear, terror, and pain that continues to this day.  The amount of monetary relief sought is within the sole discretion of the trier of fact, who will consider the evidence and decide what amount will compensate said Plaintiffs for Defendants' acts and omissions.  Plaintiffs seek all damages allowed by law for wrongful death, survival actions, and personal injury actions.

7.2     Defendants proximately caused injury and death to Jason Krell, which resulted in the following damages, among others, to the Estate of Jason Krell: (a) physical pain in the past; (b) mental anguish in the past; (c) disfigurement in the past; (d) physical impairment in the past; (e) medical expenses in the past; (f) loss of earnings and loss of future earning capacity; (g) burial expenses; and  (h) exemplary and punitive damages.

11

7.3     Defendants proximately caused injury and death to Jason Krell, which resulted in the following damages, among others, to Plaintiff Constance Millard: (a) loss of companionship and guidance in the past and future; (b) mental anguish in the past and future; (c) loss of earning capacity in the past and future; (d) loss of love, affection, care, attention, and consortium in the past and future; (e) loss of household services in the past and future; and (f) exemplary and punitive damages.

7.4     Defendants proximately caused injury and death to Jason Krell, which resulted in the following damages, among others, to Plaintiff Gerald Krell: (a) loss of companionship and guidance in the past and future; (b) mental anguish in the past and future; (c) loss of earning capacity in the past and future; (d) loss of love, affection, care, attention, and consortium in the past and future; (e) loss of household services in the past and future; and (f) exemplary and punitive damages.

7.5     Defendants proximately caused injury and death to Quinon Pitre, which resulted in the following damages, among others, to the Estate of Quinon Pitre: (a) physical pain in the past; (b) mental anguish in the past; (c) disfigurement in the past; (d) physical impairment in the past; (e) medical expenses in the past; (f) loss of earnings and loss of future earning capacity; (g) burial expenses; and  (h) exemplary and punitive damages.

7.6     Defendants proximately caused injury and death to Quinon Pitre, which resulted in the following damages, among others, to the minor A.P.: (a) loss of companionship and guidance in the past and future; (b) mental anguish in the past and future; (c) loss of earning capacity in the past and future; (d) loss of love, affection, care, attention, and consortium in the past and future; (e) loss of household services in the past and future; and (f) exemplary and punitive damages.

7.7     Defendants proximately caused injury and death to Quinon Pitre, which resulted in the following damages, among others, to the minor E.P.: (a) loss of companionship and guidance in the past and future; (b) mental anguish in the past and future; (c) loss of earning capacity in the past

12

and future; (d) loss of love, affection, care, attention, and consortium in the past and future; (e) loss of household services in the past and future; and (f) exemplary and punitive damages.

7.8      Defendants proximately caused injury and death to Quinon Pitre, which resulted in the following damages, among others, to the minor M.S.: (a) loss of companionship and guidance in the past and future; (b) mental anguish in the past and future; (c) loss of earning capacity in the past and future; (d) loss of love, affection, care, attention, and consortium in the past and future; (e) loss of household services in the past and future; and (f) exemplary and punitive damages.

7.9      Defendants proximately caused injury and death to Darren Anthony Encalade, Sr., which resulted in the following damages, among others, to the Estate of Darren Anthony Encalade, Sr.: (a) physical pain in the past; (b) mental anguish in the past; (c) disfigurement in the past; (d) physical impairment in the past; (e) medical expenses in the past; (f) loss of earnings and loss of future earning capacity; (g) burial expenses; and (h) exemplary and punitive damages.

7.10     Defendants proximately caused injury and death to Darren Anthony Encalade, Sr., which resulted in the following damages, among others, to Plaintiff Rathey Encalade: (a) loss of companionship and guidance in the past and future; (b) mental anguish in the past and future; (c) loss of earning capacity in the past and future; (d) loss of love, affection, care, attention, and consortium in the past and future; (e) loss of household services in the past and future; and (f) exemplary and punitive damages.

7.11     Defendants proximately caused injury and death to Darren Anthony Encalade, Sr., which resulted in the following damages, among others, to Plaintiff Cameron Encalade: (a) loss of companionship and guidance in the past and future; (b) mental anguish in the past and future; (c) loss of earning capacity in the past and future; (d) loss of love, affection, care, attention, and consortium

13

in the past and future; (e) loss of household services in the past and future; and (f) exemplary and punitive damages.

7.12    Defendants proximately caused injury and death to Anthony Hartford, which resulted in the following damages, among others, to the Estate of Anthony Hartford: (a) physical pain in the past; (b) mental anguish in the past; (c) disfigurement in the past; (d) physical impairment in the past; (e) medical expenses in the past; (f) loss of earnings and loss of future earning capacity; (g) burial expenses; and (h) exemplary and punitive damages.

7.13    Defendants proximately caused injury and death to Anthony Hartford, which resulted in the following damages, among others, to Plaintiff Janet Hartford: (a) loss of companionship and guidance in the past and future; (b) mental anguish in the past and future; (c) loss of earning capacity in the past and future; (d) loss of love, affection, care, attention, and consortium in the past and future; (e) loss of household services in the past and future; and (f) exemplary and punitive damages.

7.14    Defendants proximately caused injury and death to Anthony Hartford, which resulted in the following damages, among others, to Plaintiff Antranae Hartford: (a) loss of companionship and guidance in the past and future; (b) mental anguish in the past and future; (c) loss of earning capacity in the past and future; (d) loss of love, affection, care, attention, and consortium in the past and future; (e) loss of household services in the past and future; and (f) exemplary and punitive damages.

7.15    Defendants proximately caused injury and death to Gregory Walcott, which resulted in the following damages, among others, to the Estate of Gregory Walcott: (a) physical pain in the past; (b) mental anguish in the past; (c) disfigurement in the past; (d) physical impairment in the past; (e) medical expenses in the past; (f) loss of earnings and loss of future earning capacity; (g) burial expenses; and (h) exemplary and punitive damages.

14

7.16    Defendants proximately caused injury and death to Ernest J. Williams, Jr., which resulted in the following damages, among others, to the Estate of Ernest J. Williams, Jr.: (a) physical pain in the past; (b) mental anguish in the past; (c) disfigurement in the past; (d) physical impairment in the past; (e) medical expenses in the past; (f) loss of earnings and loss of future earning capacity; (g) burial expenses; and (h) exemplary and punitive damages.

7.17    Defendants proximately caused injury and death to Ernest J. Williams, Jr., which resulted in the following damages, among others, to Plaintiff Verley Williams: (a) loss of companionship and guidance in the past and future; (b) mental anguish in the past and future; (c) loss of earning capacity in the past and future; (d) loss of love, affection, care, attention, and consortium in the past and future; (e) loss of household services in the past and future; and (f) exemplary and punitive damages.

7.18    Defendants proximately caused injury and death to Ernest J. Williams, Jr., which resulted in the following damages, among others, to Plaintiff Bryson Williams: (a) loss of companionship and guidance in the past and future; (b) mental anguish in the past and future; (c) loss of earning capacity in the past and future; (d) loss of love, affection, care, attention, and consortium in the past and future; (e) loss of household services in the past and future; and (f) exemplary and punitive damages.

7.19    Defendants proximately caused injuries and damages to Plaintiff Zachary Louviere, including, but not limited to: (a) mental anguish in the past; (b) mental anguish that he is likely to sustain in the future; (c) lost earnings; (d) loss of earning capacity; (e) disfigurement in the past; (f) disfigurement that he is likely to sustain in the future (g) physical impairment in the past; (h) physical impairment that he is likely to sustain in the future; (i) medical expenses in the past; (j) medical expenses that he is likely to incur in the future; (k) physical pain and suffering in the past; (l)

15

physical pain and suffering that he is likely to sustain in the future; (m) exemplary and punitive damages; and (n) pecuniary and non-pecuniary damages to which he is entitled.

7.20    Defendants proximately caused injuries and damages to Plaintiff Charles Scallan, including, but not limited to: (a) mental anguish in the past; (b) mental anguish that he is likely to sustain in the future; (c) lost earnings; (d) loss of earning capacity; (e) disfigurement in the past; (f) disfigurement that he is likely to sustain in the future (g) physical impairment in the past; (h) physical impairment that he is likely to sustain in the future; (i) medical expenses in the past; (j) medical expenses that he is likely to incur in the future; (k) physical pain and suffering in the past; (l) physical pain and suffering that he is likely to sustain in the future; (m) exemplary and punitive damages; and (n) pecuniary and non-pecuniary damages to which he is entitled.

7.21    Defendants proximately caused injuries and damages to Plaintiff Brandon Aucoin, including, but not limited to: (a) mental anguish in the past; (b) mental anguish that he is likely to sustain in the future; (c) lost earnings; (d) loss of earning capacity; (e) disfigurement in the past; (f) disfigurement that he is likely to sustain in the future (g) physical impairment in the past; (h) physical impairment that he is likely to sustain in the future; (i) medical expenses in the past; (j) medical expenses that he is likely to incur in the future; (k) physical pain and suffering in the past; (l) physical pain and suffering that he is likely to sustain in the future; (m) exemplary and punitive damages; and (n) pecuniary and non-pecuniary damages to which he is entitled.

7.22    Plaintiffs seek all damages allowed by law.

7.23    Plaintiffs seek in excess of $500,000,000.00 and exemplary damages in the conscience of the trier of fact to deter such conscious indifference to human life and suffering and to deter corporations placing corporate profits, money, and power over the lives of hardworking Americans.

16

## VIII.  CLAIM FOR RELIEF

8.1     Pursuant to Tex. R. Civ. P. 47(c)(4), Plaintiffs are seeking monetary relief over

$1,000,000.

WHEREFORE, Plaintiffs pray the Court issue citation for Defendants to appear and answer,

and that Plaintiff be awarded judgment against Defendants, for the following:

a.      Actual damages;
b.      Exemplary damages;
c.      Prejudgment and postjudgment interest;
d.      Court costs;
e.      Punitive damages and attorney's fees; and
f.      All other relief to which Plaintiffs are entitled.

Respectfully submitted,

/s/ Eric J. Rhine
Marcus R. Spagnoletti
TX SBN 24076708
mspagnoletti@spaglaw.com
Eric J. Rhine
TX SBN 24060485
erhine@spaglaw.com
SPAGNOLETTI LAW FIRM
401 Louisiana Street, 8th Floor
Houston, Texas 77002
Telephone:     (713) 653-5600
Facsimile:     (713) 653-5656

ATTORNEYS FOR PLAINTIFFS

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Meghan Flanagan on behalf of Eric Rhine
Bar No. 24060485
meghan@spaglaw.com
Envelope ID: 86612288
Filing Code Description: Amended Filing
Filing Description: Plaintiffs' First Amended Petition
Status as of 4/12/2024 3:50 PM CST

Case Contacts

| Name | BarNumber | Email | Timestamp Submitted | Status |
|------|-----------|-------|---------------------|--------|
| Marcus RSpagnoletti | | marcus@spaglaw.com | 4/12/2024 3:08:25 PM | SENT |
| Eric JRhine | | erhine@spaglaw.com | 4/12/2024 3:08:25 PM | SENT |
| Meghan Flanagan | | meghan@spaglaw.com | 4/12/2024 3:08:25 PM | SENT |