## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| CONSTANCE MILLARD and GERALD | § | |
| KRELL, Individually and as Representatives | § | |
| of the Estate of Jason Krell, Deceased; | § | |
| MICHELLE MARTIN, as tutrix and next | § | |
| friend of A.P., E.P., and M.S., minors, and as | § | |
| Representative of the Estate of Quinon Pitre, *et al.* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. |
| - against-. | § | 4:24-cv-1694 |
| | § | |
| AMERICAN BUREAU OF SHIPPING, ABS | § | ADMIRALTY CASE |
| GROUP OF COMPANIES, INC., ABSG | § | |
| ABSG CONSULTING INC., ABS QUALITY | § | |
| EVALUATIONS, INC., and ABS GROUP | § | |
| | § | |
| Defendants. | § | |

## OPPOSITION OF DEFENDANTS TO
## PLAINTIFFS' MOTION TO REMAND

HILL RIVKINS LLP
1000 N. Post Oak Rd., Suite 220
Houston, Texas 77055
Tel.: 713-222-1515
Fax: 713-222-1359

CLARK HILL PLC
1000 Louisiana Street, Suite 2800,
Houston, Texas 77002
Tel.: 713-951-5665
Fax: 832-397-3544

## TABLE OF CONTENTS

<u>Page</u>

Table of Authorities.................................................................. ii

Concise Summary of Brief......................................................... v

Factual Background ................................................................. 2

Argument................................................................................ 5

      A. The Defendants Acted
         Under the Direction of a Federal Agency .......................................6

      B. Plaintiffs' Allegations Against Defendants are Related to
         Acts Performed Pursuant to Federal Direction ............................12

      C. Defendants Have a Colorable Federal Defense ............................16

Conclusion .............................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*Boyle v. United Technologies Corp.,*
  487 U.S. 500 (1988) ....................................................................16, 17

*Breaux v. Gulf Stream Coach, Inc.,*
  2009 U.S. Dist. LEXIS 6807, 2009 WL 152109 (E.D. La. Jan. 21, 2009) ..........7

*Butters v. Vance Int'l, Inc.,*
  225 F.3d 462 (4th Cir. 2000) ................................................................17

*Cassens v. St. Louis River Cruise Lines,*
  44 F.3d 508 (7th Cir. 1995) ................................................................18

*Glenn v. Tyson Foods, Inc.,*
  40 F.4th 230 (5th Cir. 2022) ................................................................8

*Indemnity Ins. Co. of N. Am. v. United States,*
  569 F.3d 175 (4th Cir. 2009) ................................................................18

*Jackson v. American Bureau of Shipping, 20-cv-109,*
  2020 WL 1743541, 2020 U.S. Dist. LEXIS 61621 (S.D. Tex. Apr. 8, 2020) .....13

*Kearny Barge Co. v. Andre Le Doux, Inc.,*
  709 F. Supp. 720 (E.D. La. 1989) ......................................................18

*Kircher v. Putnam Funds Trust,*
  547 U.S. 633 (2006) ........................................................................6

*Latiolais v. Huntington Ingalls, Inc.,*
  951 F.3d 286 (5th Cir. 2020) ............................................. vi, 6, 12, 16

*Plaquemines Parish v. BP America Prod. Co.,*
   103 F.4th 324, 2024 U.S. App. LEXIS 12890 (5th Cir. May 29, 2024)  ...7, 10, 12

*Preston v. Tenet Healthsys. Mem. Med. Ctr.*
   463 F. Supp. 2d 583 (E.D. La. 2006)  .....................................................1

*St. Charles Surgical Hosp., LLC v. Louisiana Health Serv. & Indem. Co.,*
   990 F.3d 447 (5th Cir. 2021)  .........................................................7, 10

*Taylor Energy Co., LLC v. Luttrell*
   3 F.4th 172 (5th Cir. 2021)  ........................................................ 16, 19-20

*Watson v. Philip Morris Companies, Inc.,*
   551 U.S. 142 (2007)  .......................................................................5, 7

*Winters v. Diamond Shamrock Chem. Co.,*
   149 F.3d 387 (5th Cir. 1998)  ........................................................16, 18

*Yearsley v. W.A. Ross Constr. Co.,*
   309 U.S. 18 (1940)  ..................................................................16, 17, 19

*Zeringue v. Crane Co.,*
   846 F.3d 785 (5th Cir. 2017)  ..............................................................8

**Statutes**

28 U.S.C. § 1442  ..................................................................v, vi, 1, 5, 6, 8

28 U.S.C. § 2680  .......................................................................... 17-18

46 U.S.C. § 14103  ...........................................................................9, 10

46 U.S.C. § 5107  ................................................................................12

46 U.S.C. § 3316 ........................................................................................4, 7, 8, 11

La. Civ. Code Ann. art. 2315.2 ...........................................................................2

La. Civ. Code Ann. art. 3492 .............................................................................2

Tex. Civ. Prac. & Rem. Code § 16.003 .............................................................2

**Regulations**

33 C.F.R. §§ 96.400 ...........................................................................................8

46 C.F.R. § 1.03-35 ...........................................................................................8

46 C.F.R. § 2.45-1 .............................................................................................1

46 C.F.R. § 69.27 ...............................................................................................8

46 C.F.R. § 8.100 *et seq.* ...................................................................................8

46 C.F.R. § 8.130 ..................................................................................7, 8, 10, 16

46 C.F.R. § 8.320 ...............................................................................................9

46 C.F.R. §§ 42.05-10, -35, -45 .........................................................................4

46 C.F.R. §§ 42.07-25 through -45 .................................................................8, 10

**Other**

76 Fed. Reg. 49981 (Aug. 11, 2011) ..............................................................10

## CONCISE SUMMARY OF BRIEF

*(In accordance with the Court's Standing Orders for Motion Practice)*

The Plaintiffs filed suit against the Defendants in the 190th Judicial District Court of Harris County, Texas, seeking recovery for death and personal injury resulting from a casualty involving a liftboat named the *SEACOR Power* ("the Vessel") in the Gulf of Mexico in April 2021.  The Plaintiffs do not contend that the Defendants owned or operated the Vessel, but rather that the Defendants were negligent in their various inspections of the Vessel.  The Plaintiffs specifically have alleged in their pleadings that the U.S. Coast Guard ("USCG") delegated authority to the Defendants for verifying that the Vessel was in compliance with international conventions and United States regulations, that the Defendants undertook inspections of the Vessel on behalf of the USCG, and that the Defendants committed errors or omissions during these inspections that contributed to the casualty.  Accordingly, the allegations in the Plaintiffs' pleadings necessarily implicate the federal officer removal statute, 28 U.S.C. § 1442(a).  In a vain attempt to avoid the exercise of this Court's jurisdiction, the Plaintiffs' Motion to Remand urges the adoption of inapplicable standards, misrepresents the content of the agreement between the Defendant American Bureau of Shipping and the U.S. Coast Guard, and conspicuously ignores the allegations in the Plaintiffs' own complaints.

v

A non-governmental defendant may remove a state court action under Section 1442(a) where (1) it is a "person"; (2) it has acted pursuant to the direction of a federal officer and/or agency; (3) it can assert a colorable federal defense; and (4) the charged conduct relates to an act pursuant to the direction of a federal officer or agency. *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020). While the Plaintiffs' motion concedes the first requirement, its arguments against the other three requirements must fail. All three remaining requirements are to be read broadly in favor of removal.

Most critically, the allegations in the Plaintiffs' own pleadings satisfy the requirements that the Defendants were "acting under" a federal officer and that the alleged acts or omissions by the Defendants relate to acts executed pursuant to the direction of a federal officer. Beyond the Plaintiffs' own allegations, the Defendants can demonstrate that their actions indeed were an effort to assist and carry out the duties of a federal agency, satisfying the "acting under" requirement. ABS has been designated by federal statute as a "Recognized Organization" ("RO") to whom the USCG has delegated authority to perform inspections on United States flagged vessels to assess their compliance with federal law and regulations and with standards embodied in international maritime conventions. The scope of the arrangement between the USCG and ABS is detailed not only in a Memorandum of Understanding, which the Plaintiffs' motion only selectively

cites, but also in numerous federal regulations, several of which are explicitly incorporated into the Memorandum. These regulations set out the express grant of authority to Defendant American Bureau of Shipping to conduct vessel compliance inspections on behalf of the USCG, as well as the explicit sets of requirements that govern the scope of the authority, including the particular international and U.S. regulatory standards to be employed during such inspections. The Plaintiffs assert in their own pleadings that the Defendants' liability arises from acts and/or omissions performed during such regulatory compliance inspections. Beyond those allegations, the Defendants can also demonstrate that the Plaintiffs' legal theories necessarily relate to the inspections the Defendants performed on behalf of the USCG.

Finally, the Defendants can demonstrate the colorable federal defense of discretionary function immunity to the Plaintiffs' claims. To maintain the removal, the Defendants are obligated to demonstrate only that a federal defense is plausible or colorable, not that the defense is necessarily sustainable. The adjudication of the full scope of a federal immunity defense is the province of a federal court, and it therefore serves as one of the most important functions of federal officer removal. That the Plaintiffs have pled that their claims are governed by federal maritime law only underscores that this Court is the proper forum for this case.

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendants, American Bureau of Shipping ("ABS"), ABS Group of Companies, Inc., ABSG Consulting Inc., ABS Quality Evaluations, Inc., and ABS Group LLC (s/h/a "ABS GROUP") (herein collectively referred to as the "Defendants"), hereby submit their opposition to the Motion to Remand of the Plaintiffs, who seek remand of this action to the 190th Judicial District Court of Harris County, Texas.  The Defendants filed a Notice of Removal to this Court based on the specific allegations in the Plaintiffs' pleadings, as well as the status of American Bureau of Shipping as a statutory Recognized Organization ("RO")[1] to whom the United States Coast Guard ("USCG") has delegated authority to perform inspections to assess compliance of vessels sailing under the flag of the United States with statutory and international convention requirements.  The Plaintiffs themselves have alleged in their Pleadings that their claims against the Defendants arise out of the Defendants' actions in performing these regulatory compliance inspections, so that their claims necessarily implicate the federal officer removal statute, 28 U.S.C. § 1442(a)(1).[2]

---

[1] "[A]n organization authorized to act on behalf of an Administration." 46 C.F.R. § 2.45-1.
[2] Contrary to the Plaintiffs' assertions, the Notice of Removal did not assert federal maritime jurisdiction as a separate basis for removal.  The sole basis for removal was and is the federal officer statute.  However, the substantive law governing the Plaintiffs' claims is indeed the general maritime law, as the Plaintiffs themselves have pled (First Amended Petition (Ex. 1 hereto) ¶ 3.1).  To that end, the Plaintiffs' citation to *Preston v. Tenet Healthsys. Mem. Med. Ctr.*, 463 F. Supp. 2d 583 (E.D. La. 2006), for the proposition that removal under section 1442(a)

1

## FACTUAL BACKGROUND

The Plaintiffs commenced this litigation by filing a Petition and a First Amended Petition ("FAP", attached as Exhibit 1 hereto) in the 190th Judicial District Court of Harris County, Texas against the Defendants.  They seek recovery for personal injury and wrongful death arising from the capsizing and sinking of the liftboat *SEACOR Power* ("the Vessel") in the Gulf of Mexico off the coast of Louisiana, on April 13, 2021 ("the Casualty").  As the Plaintiffs contend, the Vessel was overtaken by an unusually severe squall and capsized when trying to turn into the wind.  (FAP ¶ 5.2.)  The Plaintiffs are three individuals allegedly injured and the representatives of six individuals who unfortunately lost their lives during the Casualty.  (FAP ¶¶ 2.1—2.16.)   The Plaintiffs seek to hold the Defendants liable for, among other things, alleged acts and/or omissions made in the course of their performing certain inspections, audits, surveys and reviews of the Vessel, including inspections and audits specifically undertaken on behalf of the USCG.  (*See*, *e.g.*, FAP ¶¶ 5.6, 5.7, 5.12.)

---

should be interpreted with regard to the rights of states to make and enforce their own laws is entirely misplaced.  The Plaintiffs' reference to their "state law causes of action" is similarly erroneous (ECF Doc. 11 at 16), because they do not have any.  If their claims were governed by state law, contrary to the explicit allegations in their complaint, then this action would be time barred under the two-year Texas statute of limitations for personal injury and death claims or the one-year Louisiana statute of limitations for personal injury or death claims.  Tex. Civ. Prac. & Rem. Code § 16.003; La. Civ. Code Ann. arts. 2315.2(B), 3492.

Defendant ABS is a classification society and not-for-profit entity specifically chartered by the State of New York, which, among other things, publishes standards for the construction and operation of ocean-going vessels, maritime structures, and systems. (Declaration of Thomas Gruber ("Gruber Decl.") at ¶ 2.)  In addition, ABS has been designated by federal statute as a "Recognized Organization" ("RO") to whom the USCG has delegated authority to perform mandatory inspections on United States flagged vessels to assess their compliance with federal law and regulations and with standards embodied in international maritime conventions applicable to commercial vessels.  (Gruber Decl. ¶ 4; Declaration of Louis O'Donnell ("O'Donnell Decl.") ¶ 5).  The other Defendants are member companies of the ABS Group, a group of maritime consulting companies Plaintiffs allege also have responsibility for the Casualty.

The Plaintiffs allege that "ABS"[3] was the classification society for the Vessel, from the time of its construction through 2021. They also contend, however, that ABS performed other surveys "on behalf of the Coast Guard, including surveys verifying compliance with the *International Load Line Certificate, the International Convention for the Safety of Life at Sea* (SOLAS),

---

[3] As noted in the Notice of Removal, the Plaintiffs' Original and First Amended Petitions make no distinction between or among the separate Defendants, instead referring to the Defendants collectively as "ABS", so that all allegations relevant to subject matter jurisdiction apply equally to all five Defendants.  Irrespective of whether any of the individual Defendants may have had no involvement with the Vessel and have been included in this action in error, all such Defendants nevertheless consented to and joined in removal.  (ECF Doc. 1 at 5 n.1 and ¶ 20.)

and the *International Convention for the Prevention of Pollution from Ships*."
(FAP ¶ 5.6 (italics in original)).  They further specifically allege that ABS "was
delegated responsibility by the United States for verifying" that the vessel operator,
SEACOR Marine, and the vessel were in "compliance with the ISM Code and US
regulations", that "on behalf of the Coast Guard, ABS issued SEACOR Marine a
document of compliance," and that "ABS endorsed the [Vessel's] safety
management certificate valid" after having conducted a safety management
certificate audit. (FAP ¶¶ 5.7—5.8).  Such inspections assessing compliance with
these international conventions are regulatory compliance inspections that ABS
performs under delegation of authority from the USCG. (O'Donnell Decl. ¶¶ 10-
12).

Plaintiffs further allege that the National Transportation Safety Board
("NTSB") determined "that the probable cause of the [Casualty] was a loss of
stability that occurred when the vessel was struck by severe thunderstorm winds".
(FAP ¶ 5.3.)  In this vein, Plaintiffs contend that ABS failed "to ensure the vessel
met necessary stability requirements" (FAP ¶ 6.3(h)).  Pursuant to 46 U.S.C. §§
3316 and 5107 and 46 C.F.R. §§ 42.05-10, -35, and -45, the USCG has delegated
to ABS the conducting of statutory stability reviews for U.S.-flagged vessels.
(Gruber Decl. ¶¶ 6-10).

## ARGUMENT

The Defendants based their Notice of Removal on 28 U.S.C. § 1442(a)(1),

commonly known as the federal officer removal statute, which provides as follows:

> A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

The "basic purpose" of the federal officer removal statute is to protect the federal

government and its agents from the interference to government operations that

would ensue were a state able to bring federal officers and agents acting within the

scope of their authority to trial. *Watson v. Philip Morris Companies, Inc.*, 551 U.S.

142, 150-51 (2007).  Section 1442(a)(1) allows a non-governmental defendant to

remove an action filed in state court where (1) the defendant is a "person";[4] (2) the

defendant has acted pursuant to the direction of a federal officer and/or agency; (3)

the defendant can assert a colorable federal defense; and (4) the charged conduct is

connected to or associated with an act pursuant to the direction of a federal officer

---

[4] The Plaintiffs stipulate that the Defendants satisfy the personage requirement. (ECF Doc. 11 at 3 n.5).

5

or agency. *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020). In removing under Section 1442(a) and opposing a motion to remand, a Defendant may look outside the well-pleaded complaint to offer evidence establishing federal officer jurisdiction. *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 644 n.12 (2006); *Latioilais*, 951 F.3d at 290. At the same time, however, plaintiffs' allegations in their pleadings may establish one or more of the above four requirements. *Latioilais*, 951 F.3d at 296 ("the pleadings here satisfy the 'connection' condition of removal").

## A.    The Defendants Acted Under the Direction of a Federal Agency

This case involves not only a defendant that has entered into an agreement with a federal agency, but also an entity specifically identified and charged by federal statutes and in numerous federal regulations with acting on behalf of the USCG to perform vessel inspections to satisfy federal law and international conventions. Contrary to their own pleadings, the Plaintiffs now wrongly deny that ABS was acting under the direction of a federal agency in performing various inspections of the Vessel prior to the Casualty. The applicable statutory and regulatory enactments in fact confirm that ABS was a duly designated agent of the USCG in performing various regulatory inspections in accordance with U.S. law and international conventions. Finally, the accompanying Declarations demonstrate conclusively that ABS's inspections were performed at the direction,

under the authority, and in the stead of USCG employees themselves.  ABS is not a government contractor, but rather an entity designated by statute to act on behalf of the USCG.  *See, e.g.*, 46 U.S.C. §§ 3316 and 5107.  "Delegated functions performed by, and statutory certificates issued by [ABS] will be accepted as functions performed by, or certificates issued by" the USCG.  46 C.F.R. § 8.130(a).  Accordingly, ABS acted to assist and carry out the duties of a federal agency, thereby satisfying the "acting under" requirement of the removal statute.  *Watson*, 551 U.S. at 153; *Plaquemines Parish v. BP America Prod. Co.*, 103 F.4th 324, 2024 U.S. App. LEXIS 12890, at *16 (5th Cir. May 29, 2024).

The "acting under" requirement is a broad phrase that should be liberally construed.  *Watson*, 551 U.S. at 147; *Plaquemines Parish*, 2024 U.S. App. LEXIS 12890, at *16.  To demonstrate that it was acting under a federal officer or agency, a non-government entity must show that a federal officer exerted a sufficient level of subjection, guidance, or control over the entity.  Although the relationship between the federal agency/officer and defendant should be examined, a defendant is ***not*** obligated to show that its conduct was precisely dictated by a federal officer's directive.  *St. Charles Surgical Hosp., LLC v. Louisiana Health Serv. & Indem. Co.*, 990 F.3d 447, 454 (5th Cir. 2021).[5]  A non-government actor is "acting

---

[5] The Plaintiffs' reliance on *Breaux v. Gulf Stream Coach, Inc.*, 2009 U.S. Dist. LEXIS 6807, 2009 WL 152109 (E.D. La. Jan. 21, 2009) for the proposition that the federal officer must

under" a federal agency where its actions "involve an effort to assist, or to help carry out, the duties or tasks of a federal superior". *Glenn v. Tyson Foods, Inc.*, 40 F.4th 230, 234 (5th Cir. 2022) (quoting *Watson*, 551 U.S. at 152).

ABS can certainly establish that its inspections, audits, and reviews of the Vessel were carried out under the subjection, guidance, or control of the USCG, and also that ABS directly carried out the duties of a federal officer. As stated above, ABS is a "Recognized Organization" specifically identified in both the U.S. Code and the CFR to perform inspections of U.S-flagged vessels on behalf of the USCG to assess compliance with U.S. regulatory and international convention requirements and standards. Such regulatory inspections are accepted by the USCG as if performed by the USCG itself, and any certificates that ABS issues are deemed certificates issued by the USCG. 46 C.F.R. § 8.130(a). A vessel owner's appeal of any decision by ABS acting as a marine inspector on behalf of the USCG can be appealed to the Commandant of the USCG just as if the inspection had been conducted by a USCG officer. 46 C.F.R. § 1.03-35. In other words, ABS does not merely "comply with" federal regulations, but rather it enforces and executes federal regulations on behalf of the USCG.[6]

---

"strictly supervise" or exercise "direct and detailed control over the day-to-day operations" of the defendant is clearly misplaced. The Fifth Circuit has specifically rejected such a standard, holding that "[d]irect oversight of the specific acts that give rise to a plaintiff's complaint is not required to satisfy this part of § 1442." *Zeringue v. Crane Co.*, 846 F.3d 785, 792 (5th Cir. 2017).
[6] *See*, *e.g.*, 46 U.S.C. §§ 3316, 5107; 33 C.F.R. §§ 96.400 *et seq.*; 46 C.F.R. §§ 8.100 *et seq.*; 46 C.F.R. §§ 42.07-25 through -45; 46 C.F.R. § 69.27.

The Plaintiffs attempt to obfuscate and minimize ABS's statutory relationship with the USCG by misleadingly citing only to selected sections of the Memorandum of Understanding ("MOU", ECF Doc. 11-4) between the USCG and ABS.  They conveniently ignore sections of the MOU that undermine their current position, as well as the entire regulatory scheme that the MOU incorporates by explicit reference.  The MOU states that "it is incumbent upon [ABS] to understand and follow the requirements of conventions, and laws and regulations set forth within Tables 1 and 3",  and then specifies no fewer than twenty-seven (27) international convention provisions, five subchapters of the U.S. Code, and twelve subchapters of the Code of Federal regulations that govern ABS's work on behalf of the USCG.[7]  The failure of the Plaintiffs' instant argument is further underscored by the allegations in their own pleadings, which the instant motion essentially disregards.  The Plaintiffs allege in their FAP that ABS "completed surveys on behalf of" the USCG (FAP ¶ 5.6), "was delegated responsibility by the United States for verifying [the Vessel's] compliance with the ISM Code and US Regulations" (FAP ¶ 5.7), and "conducted a safety management certificate audit" of the Vessel, a requirement of the ISM Code (FAP ¶ 5.8).

Contrary to the Plaintiffs' contentions, ABS does not have to show that any

---

[7] *See* MOU Appendices A-D (ECF Doc. 11-4 at 11-26); *see, also*, 46 U.S.C. § 14103; 46 C.F.R. § 8.320(b).

federal officer directed any specific vessel inspection on which the Plaintiffs might base their legal theories.  *Plaquemines Parish* 2024 U.S. App. LEXIS 12890, at *30; *St. Charles Hosp.*, 990 F.3d at 454.  Consequently, it is irrelevant whether a particular inspection was undertaken at the direct request of Seacor or the USCG, especially where ABS, when acting as an RO, is obligated under the International Maritime Organization ("IMO") Code for Recognized Organizations ("RO Code") to avail itself to all vessel owners for statutory services in a non-discriminatory manner, without undue financial or other conditions.[8]

The statutory authority delegated to ABS to act on behalf of the USCG includes, but is not limited to, (1) issuing appropriate load line certificates or International Load Line Exemption Certificates,[9] (2) tonnage measurements,[10] and (3) issuing international convention certificates.[11]  "Delegated functions performed by, and statutory certificates issued by, an authorized classification society will be accepted as functions performed by, or certificates issued by, the Coast Guard."  46 C.F.R. § 8.130(a).  The Senate Committee on Commerce, Science, and Transportation stated that when a USCG function is delegated to a classification society, it "expects the Secretary [of the Department of Homeland Security] to

---

[8] IMO Resolution MSC.349(92), § 2.4.2 (June 21, 2013), publicly available at https://wwwcdn.imo.org/localresources/en/KnowledgeCentre/IndexofIMOResolutions/MSCResolutions/MSC.349(92).pdf .
[9] 46 U.S.C. § 5107; 46 C.F.R. §§ 42.07-35, 42.07-45.
[10] 46 U.S.C. § 14103.
[11] 76 Fed. Reg. 49981 (Aug. 11, 2011).

implement and maintain an active oversight program to ensure the continued integrity of the Federal government's various mandates in the maritime sector". S. Rep. No. 104-160, 29-30, (1995).

Contrary to the suggestion in Plaintiffs' motion, ABS's inspection activity is not performed in a vacuum, but is subject to the direct oversight of the USCG. By statute, the Coast Guard is required to have "an office that conducts comprehensive and targeted oversight of all recognized organizations that act on behalf of the Coast Guard," with staff comprising "subject matter experts, including inspectors, investigators, and auditors, who possess the capability and authority to audit all aspects of such recognized organizations." 46 U.S.C. § 3316(g)(1)-(2). USCG Navigation and Vessel Inspection Circular (NVIC) 10-82[12] is further illustrative of the USCG's oversight of ABS. Even while the USCG delegates functions to ABS, the USCG "retains statutory responsibility for marine safety", will review changes to ABS Rules and Circulars, and will "work in close cooperation" with ABS personnel at the local level to carry out oversight inspections and resolve appeals. (Exhibit 2, "Instructions for Implementation" ¶ 2(a)). Further, two seats on ABS's Advisory Council are reserved for representatives of the United States. *See* 46 U.S.C. § 3316(a).

---

[12] Circular NVIC 10-82 is publicly available at https://www.dco.uscg.mil/Portals/9/DCO%20Documents/5p/CG-5PC/CG-CVC/CVC1/ocs/policy/nvic/NVIC_10-82_ABS.pdf and annexed hereto as Exhibit 2.

**B.    Plaintiffs' Allegations Against Defendants Are Related to Acts Performed Pursuant to Federal Direction**

In claiming that ABS's inspections are not related to federal directives, the Plaintiffs again ignore their own pleadings and the significant body of federal law and regulations that apply to ABS's regulatory compliance inspections of vessels on behalf of the USCG.  The Fifth Circuit has made clear that "relating to" should be accorded its ordinary meaning, such that a lawsuit will relate to acts under federal direction where the acts or omissions alleged to be the basis of the claims are "connected or associated with" those acts.  *Plaquemines Parish*, 2024 U.S. App. 12890, at *46-47; *Latiolais*, 951 F.3d at 296.  "Like the phrase 'relating to', the phrase 'connected or associated with' captures a broad range of conduct". *Plaquemines Parish*, 2024 U.S. App. LEXIS 12890, at *47.

As the Fifth Circuit held in *Latiolais*, a defendant can satisfy the "relating to" requirement of federal officer removal based solely on the allegations in a plaintiff's complaint.  951 F.3d at 296.  As shown in Point A above, Plaintiffs have specifically alleged that ABS "completed surveys on behalf of" the USCG (FAP ¶ 5.6), and "was delegated responsibility by the United States for verifying [the Vessel's] compliance with the ISM Code and US Regulations" (FAP ¶ 5.7).[13]  The

---

[13] The Plaintiffs seek to obscure their own pleadings by inaccurately stating, without citation, that their "claims relate to ABS's negligence in inspecting the SEACOR Power pursuant to its own rules and standards".  Aside from surveying a vessel for compliance with classification

12

Plaintiffs further alleged that "ABS was negligent in its inspection, review, audit and classification of the vessel". (FAP ¶ 6.1.) Of these four types of action alleged in paragraph 6.1, all but "classification" involve ABS's work on behalf of and as the duly delegated Recognized Organization of the USCG. (*See* O'Donnell Decl. ¶ 5.) Plaintiffs also assert that ABS's acts or omissions serve as the basis for their counts of negligent misrepresentation and gross negligence. (FAP ¶¶ 6.5, 6.6, 6.9.) ABS can further demonstrate that its inspections, audits and reviews of the Vessel, including the stability analyses that Plaintiffs cite in their pleadings, were performed on behalf of the USCG pursuant to the authority conferred by statute, regulation and agreement. (*See* Gruber Decl. ¶¶ 6-10; O'Donnell Decl. ¶¶ 5-12).

The Plaintiffs' own allegations and legal theories distinguish this case from *Jackson v. American Bureau of Shipping*, 20-cv-109, 2020 WL 1743541, 2020 U.S. Dist. LEXIS 61621 (S.D. Tex. Apr. 8, 2020). In ordering remand, Judge Miller concluded that simply because ABS is subject to federal regulations did not render it an agent of the federal government when it performed classification surveys. Moreover, the plaintiff had pointed out that the ABS survey report at the center of the case was a classification survey, rather than a regulatory compliance inspection performed under delegation of authority from the USCG. In the present case,

---

society rules, Plaintiffs have specifically alleged that ABS inspected the Vessel on behalf of the USCG to "verif[y] compliance" with various international conventions. (FAP ¶¶ 5.5—5.10.)

13

however, the Plaintiffs have alleged that "ABS had more involvement than simply classing the vessel". (FAP ¶ 5.5). They not only allege that ABS performs inspections on behalf of the USCG, but base their liability theories on the regulatory compliance inspections ABS performed on behalf of the USCG. Indeed, the central matters of vessel stability, load lines and safety management systems that the Plaintiffs' pleadings emphasize as the foundation of their claims (FAP ¶¶ 5.3, 5.6-5.8, 5.10, 5.12, 6.1, 6.3) are the statutory surveys and reviews performed by ABS as a delegated agent of the federal government. (Gruber Decl. ¶¶ 6-10; O'Donnell Decl. ¶¶ 5-12).

The USCG has formally published its delegation of authority to ABS for performing stability reviews and defined the scope of that delegation in Circular NVIC 3-97,[14] cited in the Notice of Removal but ignored by the Plaintiffs' motion. NVIC 3-97 provides that: "[t]he stability of any U.S. flag vessel, with the exception of certain novel craft … may be reviewed by the ABS on behalf of the" USCG (§ 4(a)); "ABS is authorized to issue stability letters on behalf of the Coast Guard for vessels for which they have conducted a complete stability review" (§ 6(a)); and "[p]lan review, inspections, and examinations performed by the ABS

---

[14] Circular NVIC 3-97 is publicly available at
https://www.dco.uscg.mil/Portals/9/DCO%20Documents/5p/5ps/NVIC/1997/n3-97.pdf and
annexed hereto as Exhibit 3.

under the provisions of this circular may be subject to fees" (§ 6(b)).  With respect

to USCG oversight, NVIC 3-97 provides in section 8:

> OVERSIGHT. Coast Guard oversight of stability related review performed by the ABS is intended to ensure that stability review activities conducted by the ABS, result in a level of safety equivalent to that which results from the same activities when conducted by the Coast Guard. The MSC will conduct routine and non-routine oversight as described in enclosure (1).

Enclosure 1, entitled "Instructions for Implementation", describes in subsection

1(a)(1) oversight by the USCG Marine Safety Center ("MSC"):

> Routine oversight will consist of stability review conducted by the MSC independently of and concurrently with that of the ABS. The number and type of independent reviews will be determined by the MSC. Non-routine oversight will be conducted for cause, should the MSC become aware of any circumstance for which independent Coast Guard review is necessary in the interest of safety. Each such case will be reported to the Commandant and to the Coast Guard Liaison to the ABS by the MSC. Additionally, Coast Guard personnel may accompany ABS surveyors on stability tests being conducted on behalf of the Coast Guard.

The Instructions further provide that: "Coast Guard and ABS personnel will work

in close cooperation" and hold meetings as needed (§1(a)(3)); and "[t]he MSC will

keep the ABS abreast of any changes to U.S. laws and regulations, interpretations

and policies of the Coast Guard that will affect stability related reviews performed

by ABS" (§ 1(c)).  The Plaintiffs' contention that the inspections and audits by

ABS cited in their pleadings are insufficiently related to USCG directives therefore

rings hollow.

## C.  Defendants Have a Colorable Federal Defense

As Plaintiffs themselves allege, ABS performs inspections and issues certificates as a Recognized Organization acting on behalf of the USCG.  (FAP ¶¶ 5.5—5.9).  Such inspections and certificates are deemed performed and issued by the USCG under 46 C.F.R. § 8.130(a).  Accordingly, ABS is entitled to the same discretionary function immunity that applies to the USCG. (*See* Defendants' Answer, ECF Doc. 5, ¶ 12.)  As agent acting for the USCG under due statutory authority, ABS executes the will of the government, such that the statutory immunity should be extended to ABS.  *See*, *e.g.*, *Boyle v. United Technologies Corp.*, 487 U.S. 500, 506 (1988); *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 20-21 (1940); *Taylor Energy Co., LLC v. Luttrell*, 3 F.4th 172 (5th Cir. 2021).  For purposes of maintaining the removal in the face of a motion to remand, the Defendants do not have to "prove" that the defense is applicable or even "clearly sustainable" at the removal stage, only that it is colorable or plausible.  *Latiolais*, 951 F.3d at 296-97; *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398-400 (5th Cir. 1998).

The U.S. Supreme Cort has held that private entities acting on behalf of the government, whether providing services or supplying manufactured goods, can be entitled to governmental function immunity, where the federal government has validly conferred authority on the contractor and the contractor was executing the

16

"will" of the government.  *Boyle*, 487 U.S. at 506 (immunity is available to manufacturers that manufacture to government specifications); *Yearsley*, 309 U.S. at 20-21 (immunity for construction contractor building dikes for the Army Corps). The Court held in *Yearsley* that if "[t]he authority to carry out the project was validly conferred…there is no liability on the part of the contractor for executing [the Government's] will."  309 U.S. at 20-21.  An agent is liable under *Yearsley* only if "he exceeded his authority, or that [the authority] was not validly conferred."  *Id.* at 21; *see also Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000) (it is "well-settled law that contractors and common-law agents acting within the scope of their employment for the United States have derivative sovereign immunity").

Because ABS was acting on behalf of the USCG pursuant to statutory authority, such that its work was deemed the work of the USCG, it is entitled to the same immunity as a USCG employee performing the same inspection.  The Seventh Circuit has held that USCG safety inspections are the type of act performed "in execution of a statute or regulation" and that call for "the exercise or performance [of] a discretionary function or duty" to implicate the exception to the sovereign immunity waiver within the meaning of 28 U.S.C. § 2680(a):

> The protected discretion at issue is the discretion to formulate and conduct a specific inspection procedure for a particular ship. The discretionary function exception shields the entire inspection process including alleged negligent omissions. If the discretionary function

exception could be pierced by showing negligent acts in implementing the discretionary function, the exception would be no shield at all.

*Cassens v. St. Louis River Cruise Lines*, 44 F.3d 508, 515 (7th Cir. 1995); *see also*

*Indemnity Ins. Co. of N. Am. v. United States*, 569 F.3d 175, 180 (4th Cir. 2009);

*Kearny Barge Co. v. Andre Le Doux, Inc.*, 709 F. Supp. 720, 721-22 (E.D. La. 1989).

The full scope and validity of the federal immunity defense available to the Defendants is not to be decided at the removal stage, which is why Defendants are only required to show a "colorable" defense. As the Fifth Circuit held in *Winters*,

> one of the most important functions of this right of removal is to allow a federal court to determine the validity of an asserted official immunity defense. Removal pursuant to § 1442(a)(1) is thus meant to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties. Furthermore, this right is not to be frustrated by a grudgingly narrow interpretation of the removal statute.

149 F.3d at 397 (citations and internal quotations omitted). Therefore, it is the role of this Court, and not the state court, to assess the scope of the discretionary function immunity defense as applied to the Defendants. The fact that the claims of the Plaintiffs, who seek recovery for a casualty in the navigable waters of the Gulf of Mexico, are governed by federal maritime law rather than any state law only underscores the propriety of this Court's fully adjudicating the matter.

In contending that the Defendants cannot show a colorable defense, the Plaintiffs cite an inapplicable standard that has no bearing on entities that perform

18

statutory inspections on behalf of the government.  ABS is not a supplier of manufactured products seeking to assert the government contractor immunity defense, as in cases such as *Boyle* or even *Winters*.  Rather, ABS is a Recognized Organization charged by statute and regulation with standing in the place of the USCG itself to perform vessel inspections.  ABS's ultimate burden of proof on the government immunity defense for service providers to the government is twofold: (1) that its work was authorized and directed by the government; and (2) that its work was performed pursuant to an Act of Congress.  *Yearsley*, 309 U.S. at 20; *Taylor Energy Co.*, 3 F.4th at 175.  ABS has amply demonstrated both requirements in Sections A and B above.  The Plaintiffs further stumble in claiming that their allegations do not implicate the interpretation of any federal statute, regulation or delegation, the MOU or any other agreement conferring authority to ABS.  They themselves allege that ABS performed inspections on the Vessel under delegation of authority from the USCG.  The grant of authority explicitly directs ABS to perform the regulatory compliance inspections by applying the substantive policies and requirements set out in USCG regulations and/or the IMO conventions that the Plaintiffs cite in their pleadings.

The Plaintiffs are also mistaken in contending that the USCG did not exert sufficient control over ABS's inspections and certifications to implicate an immunity defense.  As the Fifth Circuit made clear in *Taylor Energy Co.*, the

government agent's retention of decision-making authority does not defeat the

immunity under *Yearsley*:

> *Yearsley* did not focus on whether the Government designed the river
> dikes that led to the plaintiffs' injuries, but whether the contractor's
> work was "done pursuant to a contract with the United States
> Government, and under the direction of the Secretary of War and the
> supervision of the Chief of Engineers of the United States . . . ." 309
> U.S. at 19. The appropriate inquiry is whether Couvillion adhered to
> the Government's instructions as described in the contract documents.

3 F.4th at 176.

The extensive regulatory scheme under which ABS performs its inspections

and certifications, however, provides ample direction by the USCG to ABS in

carrying out the statutory, flag state, and/or international convention inspections

required by U.S. law.  As Section 5 of the USCG/ABS MOU makes clear, the

USCG retains all authority to interpret the applicable conventions, statutes and

regulations under which ABS performs delegated functions, and any deviations

from those regulatory structures can be approved only by the USCG.

## CONCLUSION

As set out in detail above, the Plaintiffs' own allegations and the

Defendants' submissions herein thoroughly establish that ABS was acting under a

federal officer, that the acts and omissions alleged by the Plaintiffs relate to ABS's

acting under federal office, and that ABS has a valid federal defense.  Accordingly,

the instant Motion to Remand this case to the Texas state court must be denied.

Respectfully submitted,

Dated:  June 26, 2024

HILL RIVKINS LLP
Attorneys for Defendants
*American Bureau of Shipping; abs Group of Companies, Inc.; ABSG Consulting, Inc.; ABS Quality Evaluations, Inc.; and ABS Group*

   /s/ *John J. Sullivan*
John J. Sullivan
SDTX I.D. No.: 1531846
Hannah E. Taylor
SDTX I.D. No. 3805262

HILL RIVKINS LLP
1000 N. Post Oak Rd., Suite 220
Houston, Texas 77055
Tel.:  713-222-1515
Fax:  713-222-1359
Email:       jsullivan@hillrivkins.com
                    htaylor@hillrivkins.com

James M. Kimbell
SDTX ID No.: 1627

CLARK HILL PLC
1000 Louisiana Street, Suite 2800,
Houston, Texas 77002
Tel.:  713-951-5665
Fax:   832-397-3544
Email:       jkimbell@clarkhill.com

21

**CERTIFICATE OF SERVICE**

I hereby certify that on June 26, 2024, I electronically filed the foregoing document with the Clerk of Court for the United States District Court, Southern District of Texas, using the CM/ECF system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record, who have consented in writing to accept this Notice as service of this document by electronic means.

 /s/ *John J. Sullivan*
John J. Sullivan