# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| CONSTANCE MILLARD and GERALD | § | |
| KRELL, Individually and as Representatives | § | |
| of the Estate of Jason Krell, Deceased; | § | |
| MICHELLE MARTIN, as tutrix and next | § | |
| friend of A.P., E.P., and M.S., minors, and as | § | |
| Representative of the Estate of Quinon Pitre, *et al.* | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. |
| - against-. | § | 4:24-cv-1694 |
| | § | |
| AMERICAN BUREAU OF SHIPPING, ABS | § | ADMIRALTY CASE |
| GROUP OF COMPANIES, INC., ABSG | § | |
| ABSG CONSULTING INC., ABS QUALITY | § | |
| EVALUATIONS, INC., and ABS GROUP | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' (OPPOSED) MOTION FOR
## RECONSIDERATION OF COURT'S ORDER OF REMAND

HILL RIVKINS LLP
1000 N. Post Oak Rd., Suite 220
Houston, Texas 77055
Tel.:  713-222-1515
Fax:  713-222-1359

CLARK HILL PLC
1000 Louisiana Street, Suite 2800,
Houston, Texas 77002
Tel.:  713-951-5665
Fax:  832-397-3544

# TABLE OF CONTENTS

<u>Page</u>

Table of Authorities...................................................................... ii

Concise Summary of Brief............................................................. vi

Factual and Procedural Background ............................................. 1

Argument....................................................................................... 5

   RECONSIDERATION IS PROPER IN LIGHT OF
   NEW FIFTH CIRCUIT PRECEDENT AND TO
   PREVENT MANIFEST INJUSTICE ............................................ 6

      A.   The Fifth Circuit's Recent Decision in
          *Caris MPI, Inc. v. UnitedHealthcare, Inc.*
          Requires Reconsideration of This Court's
          Remand Order ...................................................................... 7

      B.   The Court's Order of Remand
          Would Work a Manifest Injustice ...................................... 11

Conclusion ................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*Allstate Texas Lloyds. Ins. Co. v. Mathews*, 02-cv-964,
   2008 U.S. Dist. LEXIS 132475 (S.D. Tex. Mar. 27, 2008) ...................................6

*Bender Square Partners v. Factory Mut. Ins. Co.*, 10-cv-4295,
   2012 U.S. Dist. LEXIS 74709 (S.D. Tex. May 30, 2012) ...................................12

*Caris MPI, Inc. v. UnitedHealthcare, Inc.*,
   108 F.4th 340 (5th Cir. July 16, 2024) ..........................................................*passim*

*Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*,
   6 F.3d 350 (5th Cir. 1993) ..................................................................................11

*Gasch v. Harford Acc. & Indem. Co.*, 491 F.3d 278 (5th Cir. 2007) ....................12

*Glenn v. Tyson Foods, Inc.*, 40 F.4th 230 (5th Cir. 2022) ......................................15

*Guillory v. PPG Indus., Inc.*, 434 F.3d 303 (5th Cir. 2005) ..................................12

*Jackson v. American Bureau of Shipping*, 20-cv-109,
   2020 WL 1743541, 2020 U.S. Dist. LEXIS 61621 (S.D. Tex. Apr. 8, 2020) .....19

*In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002) ...........................6

*Latiolais v. Huntington Ingalls, Inc.*,
   951 F.3d 286 (5th Cir. 2020) .................................................................. 13-14, 17

*Life Partners Creditors' Trust v. Cowley (In re Life Partners Holdings, Inc.*),
   926 F.3d 103 (5th Cir. 2018) .................................................................................6

*Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001) ...........................14

*Quintana v. Liberty Mut. Fire Ins. Co.*, 10-cv-2979,
   2011 U.S. Dist. LEXIS 171432 (S.D. Tex. Aug. 18, 2011) ................................. 6

*Plaquemines Parish v. BP America Prod. Co.,*
  103 F.4th 324 (5th Cir. 2024) ........................................................15, 17

*Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457 (5th Cir. 2016) ................ 16-17

*In re Shell Oil Co.*, 932 F.2d 1523 (5th Cir. 1991) ...........................................1

*St. Charles Surgical Hosp., LLC v. Louisiana Health Serv. & Indem. Co.,*
  990 F.3d 447 (5th Cir. 2021) ........................................................13, 15

*Taylor Energy Co., LLC v. Luttrell*
  3 F.4th 172 (5th Cir. 2021) ...................................................................20

*Texas v. Kleinert*, 855 F.3d 305 (5th Cir. 2017) ......................................13

*Watson v. Philip Morris Companies, Inc.,*
  551 U.S. 142 (2007) ...............................................................................15

*Willingham v. Morgan*, 395 U.S. 402 (1969) ..........................................13

*Winters v. Diamond Shamrock Chem. Co.,*
  149 F.3d 387 (5th Cir. 1998) ............................................ 13, 17, 19-20

*Yearsley v. W.A. Ross Constr. Co.,*
  309 U.S. 18 (1940) ...............................................................................20

**Statutes**

28 U.S.C. § 1442 ............................................................... 1, 5, 13, 19-20

28 U.S.C. § 1447 ........................................................................................1

46 U.S.C. § 3316 ..............................................................................2, 4, 8

46 U.S.C. § 5107 ..............................................................................2, 4, 8

46 U.S.C. § 14103 ......................................................................................8

Fed. R. Civ. Pro. 59 ..............................................................................1, 11

## Regulations

33 C.F.R. §§ 96.400 ............................................................4, 8

46 C.F.R. § 2.45-1 ...............................................................2

46 C.F.R. § 69.27 ..............................................................4, 8

46 C.F.R. § 8.100 *et seq.* ...................................................4, 8

46 C.F.R. § 8.320 ..................................................................8

46 C.F.R. §§ 42.05-10, -45, -60 .............................................4

46 C.F.R. §§ 42.07-25 through -45 .......................................4, 8

## Other

11 Wright, Miller, & Kane, *Federal Practice and Procedure: Civil 2d* § 2803 (1995) ..............................................11

12 *Moore's Federal Practice* § 59.30 (3d ed. 2003) ............11

## CONCISE SUMMARY OF BRIEF

*(In accordance with the Court's Standing Orders for Motion Practice)*

After the Defendants lawfully removed this action from the 190th Judicial District Court of Harris County, Texas, under the federal officer removal statute, this Court granted the Plaintiffs' Motion to Remand.  The Plaintiffs had specifically pleaded that the Defendants had been acting on behalf of the United States Coast Guard ("USCG") when performing certain inspections on the liftboat named the *SEACOR Power*.  Nevertheless, the Court concluded that the Defendants could not show that they had "acted under" a federal officer when performing those inspections.  Two days before the Court issued its remand order, the Fifth Circuit concluded that "when a contractor helps the Government perform a job that, in the absence of a contract, the Government itself would have had to perform, and that relationship involves detailed regulation, monitoring, or supervision, the private contractor is 'acting under' a federal officer's direction." *Caris MPI, Inc. v. UnitedHealthcare, Inc.*, 108 F.4th 340, 348 (5th Cir. July 16, 2024).

This holding clearly would apply to a classification society that has been designated by Congress to stand in the shoes of the USCG to perform regulatory vessel inspections required by statute, international convention, and CFR

regulations.  In light of this recent authority, this Court should reconsider its Order of Remand.

Reconsideration is also proper under the standard for the prevention of manifest injustice in the Fifth Circuit.  Respectfully, the Court appears to have overlooked the numerous allegations in the Plaintiffs' pleadings specifically asserting that the Defendants were "delegated authority by the United States" for verifying vessel compliance with international conventions and U.S. law, and that the Defendants completed "surveys … on behalf of the Coast Guard [] verifying compliance with" international conventions.  The Plaintiffs also alleged that the Defendants committed actions or omissions during these inspections on behalf of the USCG that give rise to their claims.  However, these inspections also implicate the defense of federal discretionary immunity, so that the Defendants clearly have established all the requirements for federal officer immunity.  Requiring this matter to be litigated in the Texas state court in the face of the strong federal policy favoring adjudication against federal officers in federal court would work a manifest injustice.  Accordingly, the Court should reconsider its prior Order and deny the Plaintiffs' Motion for Remand.

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Pursuant to Federal Rule of Civil Procedure 59(e), the Defendants, American Bureau of Shipping ("ABS"), ABS Group of Companies, Inc., ABSG Consulting Inc., ABS Quality Evaluations, Inc., and ABS Group LLC (s/h/a "ABS GROUP") (herein collectively referred to as the "Defendants"), hereby submit this **Motion for Reconsideration** of the Court's Decision and Order of July 18, 2024 (ECF Doc. 18), granting the Plaintiffs' Motion for Remand to the 190th Judicial District Court of Harris County, Texas (ECF Doc. 11).  The Defendants respectfully request that the Court reconsider its granting of the Motion to Remand, especially in light of controlling authority from the Fifth Circuit, issued just two days before the Court's decision, in *Caris MPI, Inc. v. UnitedHealthcare, Inc.*, 108 F.4th 340 (5th Cir. July 16, 2024).  A copy of the Fifth Circuit's decision is attached as Exhibit 1 hereto.  As the case was removed under 28 U.S.C. § 1442, Defendants have a statutory right to review of the remand order under 28 U.S.C. § 1447(d) and this Court has jurisdiction to vacate its own order.  *See In re Shell Oil Co.*, 932 F.2d 1523, 1528 (5th Cir. 1991).

## FACTUAL AND PROCEDURAL BACKGROUND

The Plaintiffs commenced this litigation by filing a Petition and a First Amended Petition ((ECF Doc. 12-1 ("FAP")) in the 190th Judicial District Court of Harris County, Texas, against the Defendants.  Plaintiffs seek recovery for

personal injury and wrongful death arising from a casualty involving the *SEACOR Power*, a "liftboat" sailing under the flag of the United States ("the Vessel"), which capsized and sank in the Gulf of Mexico off the coast of Louisiana, on April 13, 2021 ("the Casualty").  The Plaintiffs are three individuals allegedly injured and the representatives of six individuals who unfortunately lost their lives during the Casualty.  (FAP ¶¶ 2.1—2.16.)  The Plaintiffs seek to hold the Defendants liable for, among other things, alleged acts and/or omissions made while performing certain inspections, audits, surveys, and reviews of the Vessel.  In fact, the Plaintiffs specifically have alleged that the Defendants performed regulatory inspections and audits undertaken on behalf and in the place of the United States Coast Guard ("USCG").  (*See*, *e.g.*, FAP ¶¶ 5.6, 5.7, 5.12.)

Defendant ABS is a not-for-profit entity specially chartered by act of the New York State legislature in 1862.  As is relevant in this case, ABS essentially wears two hats.  As a classification society serving builders, owners and operators, it publishes standards for the construction and operation of ocean-going vessels, maritime structures, and systems.  (Declaration of Thomas Gruber ("Gruber Decl.") ¶ 2, ECF Doc. 12-5; Declaration of Louis O'Donnell ("O'Donnell Decl.") ¶ 2, ECF Doc. 12-4.)  However, ABS also serves the United States government and

is designated by federal statute as a "Recognized Organization" ("RO")[2] to whom the USCG has delegated authority to perform mandatory inspections and reviews of United States flagged vessels on behalf of and in the place of the USCG.  In this role as agent of the USCG, ABS assesses vessels' compliance with federal law and regulations and with standards embodied in international maritime conventions. (Gruber Decl. ¶ 4; O'Donnell Decl. ¶ 5.)  The other Defendants are member companies of the ABS Group, a group of maritime consulting companies that the Plaintiffs allege also have responsibility for the Casualty.

The Plaintiffs allege that "ABS"[3] was the classification society for the Vessel, from the time of its construction through 2021.  They also contend, however, that "ABS had more involvement than simply classing the vessel", and that it performed other surveys "on behalf of the Coast Guard, including surveys verifying compliance with the *International Load Line Certificate, the International Convention for the Safety of Life at Sea* (SOLAS), and the *International Convention for the Prevention of Pollution from Ships*."  (FAP ¶¶ 5.5—5.6 (italics in original)).  They further specifically allege that ABS "was

---

[2] 46 U.S.C. §§ 3316, 5107.  An RO is defined as "an organization authorized to act on behalf of an Administration,", while "Administration" is defined as "the Government of the State whose flag the ship is entitled to fly."  46 C.F.R. § 2.45-1.  For a vessel sailing under the flag of the United States as in this case, the U.S. government, acting chiefly through the USCG, would be the Administration.

[3] As noted in the Notice of Removal, the Plaintiffs' Original and First Amended Petitions make no distinction between or among the separate Defendants, instead referring to the Defendants collectively as "ABS". All Defendants consented to and joined in removal.  (ECF Doc. 1 at 5 n.1 and ¶ 20.)

delegated responsibility by the United States for verifying" that the vessel operator, SEACOR Marine, and the Vessel were in "compliance with the ISM Code and US regulations", that "on behalf of the Coast Guard, ABS issued SEACOR Marine a document of compliance," and that "ABS endorsed the [Vessel's] safety management certificate valid" after having conducted a safety management certificate audit.  (FAP ¶¶ 5.7—5.8.)  Such inspections assessing compliance with these international conventions are regulatory compliance inspections that ABS performs on behalf of the USCG pursuant to explicit delegation of authority. (O'Donnell Decl. ¶¶ 10-12, ECF Doc. 12-4.)  ABS does not merely "comply with" federal regulations, but rather it enforces and executes federal regulations on behalf of the USCG.[4]

Plaintiffs further allege that the National Transportation Safety Board ("NTSB") determined "that the probable cause of the [Casualty] was a loss of stability that occurred when the vessel was struck by severe thunderstorm winds." (FAP ¶ 5.3.)  Plaintiffs contend that ABS failed "to ensure the vessel met necessary stability requirements".  (FAP ¶ 6.3(h).)  Pursuant to 46 U.S.C. §§ 3316 and 5107 and 46 C.F.R. §§ 42.05-10, -45 and -60, the USCG has delegated to ABS statutory stability reviews for U.S.-flagged vessels.  (Gruber Decl. ¶¶ 6-10.)

The Notice of Removal dated May 6, 2024 (ECF Doc. 1), was based on the

---

[4] *See*, *e.g.*, 46 U.S.C. §§ 3316, 5107; 33 C.F.R. §§ 96.400 *et seq.*; 46 C.F.R. §§ 8.100 *et seq.*; 46 C.F.R. §§ 42.07-25 through -45; 46 C.F.R. § 69.27.

specific allegations in the Plaintiffs' pleadings, as well as the status of ABS as an RO to whom the USCG has delegated authority to perform inspections to assess compliance of vessels sailing under the flag of the United States with statutory and international convention requirements.  As outlined above and stated throughout Defendants' Opposition to the Motion to Remand (*see, e.g.,* ECF Doc. 12 at v, 1, 2, 4, 9, 12, 13, 14, 16, 19), the Plaintiffs themselves have alleged in their pleadings that their claims against the Defendants arise out of the Defendants' actions in performing these regulatory compliance inspections, so that their claims necessarily implicate the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

In an order dated July 18, 2024, the Court found that ABS did not demonstrate that it acted pursuant to a federal officer's direction, and that in light of this finding, the Court need not address the remaining two factors attendant to federal officer jurisdiction.  (ECF Doc. 18 at 7.)  The Court therefore granted the Plaintiffs' motion to remand.  (*Id.*)  Two days earlier, the Fifth Circuit issued its decision in *Caris MPI, Inc. v. UnitedHealthcare, Inc.*, in which it held that "when a contractor helps the Government perform a job that, in the absence of a contract, the Government itself would have had to perform, and that relationship involves detailed regulation, monitoring, or supervision, the private contractor is 'acting under' a federal officer's direction."  108 F.4th 340, 348 (5th Cir. July 16, 2024).

## **ARGUMENT**

## RECONSIDERATION IS PROPER IN LIGHT OF NEW FIFTH CIRCUIT PRECEDENT AND TO PREVENT MANIFEST INJUSTICE

The Fifth Circuit treats "a motion to reconsider as a motion to alter or amend a judgment under Rule 59(e) or a motion for relief from judgment pursuant to Rule 60, depending upon when the motion is filed." *Quintana v. Liberty Mut. Fire Ins. Co.*, Civil Action No. H-10-2979, 2011 U.S. Dist. LEXIS 171432, at *2 (S.D. Tex. Aug. 18, 2011). A motion for reconsideration such as the instant motion filed within 28 days of a final judgment will be construed as a Rule 59(e) motion to alter or amend the district court's judgment. *Life Partners Creditors' Trust v. Cowley (In re Life Partners Holdings, Inc.*), 926 F.3d 103, 128 (5th Cir. 2019). In such case, the Circuit recognizes the following bases for reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice. *In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002); *Allstate Texas Lloyds. Ins. Co. v. Mathews*, Civil Action No. H-02-964, 2008 U.S. Dist. LEXIS 132475, at *5 (S.D. Tex. Mar. 27, 2008). In light of the recent Fifth Circuit authority and to prevent manifest injustice, Defendants respectfully submit that the Court should reconsider the conclusion that ABS was not entitled to remove this action when it stood in the shoes of USCG in performing regulatory inspections and reviews of the Vessel.

**A.**     **The Recent Fifth Circuit Decision in *Caris MPI, Inc. v. UnitedHealthcare, Inc.* Requires Reconsideration of This Court's Remand Order**

This Court granted the Plaintiffs' Motion for Remand on the grounds that the Defendants had not established that they "acted pursuant to a federal officer's direction" in performing regulatory inspections of the Vessel.  (ECF Doc. 18 at 6.) This Court emphasized that "being subject to pervasive federal regulation alone is not sufficient to confer federal jurisdiction".  (*Id.*)  Two days before this Court issued its Decision and Order granting Plaintiffs' Motion to Remand, the Fifth Circuit issued its decision in *Caris MPI, Inc. v. UnitedHealthcare, Inc.*, affirming the removal under the federal officer removal statute of a case brought against a Medicare Advantage provider in a dispute over recoupment of benefits payments. The Fifth Circuit concluded that when a contractor performs official tasks in the place of a government agency or official and is subject to sufficient oversight, the contractor has met the "acting under" requirement for removal:

> Next, we consider whether United has acted pursuant to a federal officer's direction.  We construe the "acting under" requirement broadly.  A removing defendant need not prove that its conduct was precisely dictated by a federal officer's directive. Instead, the "acting under" inquiry examines the *relationship* between the removing party and the relevant federal officer.  A relationship is sufficiently close if the federal officer exercises "subjection, guidance, or control" over the removing party and that party is assisting or helping carry out a federal officer's duties, as opposed merely to "*complying* with the law." **When a contractor helps the Government perform a job that, in the absence of a contract, the Government itself would have had to perform," and that relationship involves "detailed regulation,**

7

> **monitoring, or supervision, the private contractor is "acting under" a federal officer's direction**.

108 F.4th 340, 347-48 (5th Cir. 2024) (emphasis in bold added) (internal quotations and citations omitted).

Like UnitedHealthcare in *Caris MPI*, ABS not only assisted a federal agency but, as to the conduct upon which liability is allegedly based, ABS actually conducted regulatory inspections and reviews that the USCG was statutorily required to perform on United States flagged vessels.  But for the statutory delegation of responsibility to ABS to perform these regulatory inspections, the USCG would have had to perform those inspections and reviews itself – *i.e.*, as to the conduct at issue, ABS was standing in the shoes of USCG.  When ruling on the remand motion, this Court acknowledged ABS' contention that "a litany of statutes and provisions [] govern ABS's work on behalf of the USCG."  (ECF Doc. 18 at 6.)  Indeed, ABS' opposition to the Motion to Remand (Doc. 12, hereinafter also "ABS' Opposition") highlighted the inclusion of the Appendices of the Memorandum of Understanding ("MOU") between the USCG and ABS, which listed no fewer than twenty-seven (27) international convention provisions, five (5) subchapters of the U.S. Code, and twelve (12) subchapters of the Code of Federal regulations that ABS enforces in performing inspections on behalf of the USCG.[5]

---

[5] *See* MOU Appendices A-D (ECF Doc. 11-4 at 11-26); *see*, *also*, 46 U.S.C. §§ 3316, 5107, 14103; 33 C.F.R. §§ 96.400 *et seq.*; 46 C.F.R. §§ 8.100 *et seq.*, 8.320(b), 42.07-25 through -45, 69.27.

(ECF Doc. 12 at 9.)  The MOU also sets out the scope of the USCG's supervision of ABS through audits, inspections, and other monitoring activities, and requires that the USCG be provided access to ABS' relevant documentation and information.  (MOU ¶ 10, ECF Doc. 11-4.)  The Defendants also cited and quoted the various circulars published by the USCG further detailing the USCG oversight to which ABS is subject.  (ECF Doc. 12 at 11.)

As argued in ABS' Opposition, rather than simply "complying with" federal regulations, ABS actually enforces and executes federal law and regulations on behalf of and in the place of the USCG.  (ECF Doc. 12 at 8.)  ABS in effect stands in the shoes of the USCG to perform regulatory inspections that the USCG is required to perform under international conventions and federal law.  Accordingly, ABS clearly satisfied all the requirements to be "acting under" a federal officer, as held in the recent controlling authority of *Caris MPI*.  As set out in detail in Point B below and in sections B and C of its Opposition to the Motion to Remand, ABS also clearly demonstrated the remaining requirements for federal officer removal.

In conflict with their own pleadings[6], the Plaintiffs incorrectly argued that on behalf of the USCG, ABS performed inspections and certifications "under its own rules and standards, of which it was the author and sole judge," (ECF Doc. 11 at 15), and the Court noted that inaccurate argument in ruling on the motion to

---

[6] *See* FAP ¶¶ 5.6—5.9, (ECF Doc. 12-1).

remand (ECF Doc. 18 at 5).  However, the MOU's definitions state that "statutory

certification and services means certificates issued, and services provided, on the

authority of laws, rules and regulations set down by the Administration," – the

Administration being the U.S Government acting through the USCG, ***not ABS***.

(MOU ¶ 3.1.1, ECF Doc. 11-4.)  The MOU goes on to delegate authority to ABS

to determine a vessel's compliance with the requirements of "applicable

instruments," defined as "international conventions, international codes, and U.S.

laws and regulations."  (MOU ¶¶ 3.1.3, 3.2.)  The MOU further provides that

"interpretation of the applicable instruments, as well as determining the

acceptability of proposed equivalents or the acceptance of substitutes to the

requirements of the applicable instruments, is the prerogative of the

Administration."  (MOU ¶ 5.2.1.)  The MOU requires ABS to maintain the

minimum standards, conditions, and other requirements set out in the MOU and its

appendices, including without limitation those contained in the statutes and

regulations cited in paragraph 3.5 of the MOU.  Paragraph 3.6 of the MOU states

that "[t]he minimum standards, conditions, and other requirements found within

Appendices B, C, and D to this Agreement may be added to, but not reduced by,

this Agreement."  Further, ABS "shall allow participation in the development and

review of its rules, procedures and/or regulations, specifically in the review process

prior to finalization, by representatives of the Administration."  (MOU ¶ 7.1, ECF
Doc. 11-4.)

The full scope of ABS' work on behalf of the USCG, as alleged by the
Plaintiffs and confirmed by the detailed agreement embodied in the MOU,
conclusively demonstrates that ABS was performing tasks that, in the absence of a
contract, the USCG itself would have had to perform itself.  The MOU and the
extensive regulatory scheme incorporated therein confirm that the relationship
between the USCG and ABS involves detailed regulation, monitoring, and
supervision.  Accordingly, the Fifth Circuit's holding in *Caris MPI* is controlling
as to whether ABS was "acting under" a federal officer.

## B.   The Court's Order of Remand Would Work a Manifest Injustice

A motion for reconsideration gives a judge ample power to prevent a
miscarriage of justice. 11 Wright, Miller, & Kane, *Federal Practice and
Procedure: Civil 2d* § 2803 (1995).  When a party moves under Rule 59(e), the
court is obligated to balance carefully the need for finality with the need to render a
just decision based on all the facts.  *Edward H. Bohlin Co., Inc. v. Banning Co.,
Inc.,* 6 F.3d 350, 355 (5th Cir.1993).  The court's obligation is increased "when the
judgment, absent amendment, creates or results in a manifest injustice."  12
*Moore's Federal Practice* § 59.30[5] [a][v] (3d ed. 2003).  "[W]hat is clear from
case law, and from a natural reading of the term, is that a showing of manifest

injustice requires that there exist a fundamental flaw in the court's decision that without correction would lead to a result that is both inequitable and not in line with applicable policy." *Bender Square Partners v. Factory Mut. Ins. Co.*, No. 4:10-CV-4295, 2012 U.S. Dist. LEXIS 74709, at *13 (S.D. Tex. May 30, 2012) (citations omitted).  Defendants respectfully submit that the Court so erred when it overlooked the multitude of Plaintiffs' specific pleading allegations that ABS was performing tasks on behalf of the USCG and enforcing requirements of statutes, regulations, and international conventions as a duly authorized agent of the USCG, and not merely acting as a commercial entity in the marketplace subject to federal regulation.  ABS also provided the Court with evidence confirming the Plaintiffs' pleading allegations that ABS performed regulatory inspections as a Recognized Organization acting on behalf of the USCG pursuant to specific statutory delegation of authority.

As a preliminary matter, the Court committed a manifest error in its analysis in stating that "[w]hen evaluating a motion to remand, all factual allegations are considered in the light most favorable to the plaintiff, and any contested fact issues are resolved in the plaintiff's favor".  (ECF Doc. 18 at 2.)  While that rule of construction applies to removals based on diversity,[7] the Fifth Circuit has explicitly

---

[7] The two cases the Court cited for the proposition both involved removal on diversity grounds pursuant to 28 U.S.C. § 1441, with the additional discrete issue of alleged joinder of unnecessary defendants to defeat diversity; neither case involved federal officer removal under Section

rejected it when removal is based on the federal officer statute. To the contrary, the federal officer removal statute is to be read broadly to effectuate the federal policy of having federal courts adjudicate claims against federal officers. "[F]ederal officer removal under 28 U.S.C. § 1442 is unlike other removal doctrines: it is not narrow or limited." *Caris MPI*, 108 F.4th at 345. (citing *St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, 990 F.3d 447, 450 (5th Cir. 2021); *Texas v. Kleinert*, 855 F.3d 305, 311 (5th Cir. 2017)); *see also Willingham v. Morgan*, 395 U.S. 402, 407 (1969) ("Congress has decided that federal officers, and indeed the Federal Government itself, require the protection of a federal forum. This policy should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)"); *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998) ("We have previously noted the Supreme Court's admonishment that the statute's 'color of federal office' requirement is neither 'limited' nor 'narrow,' but should be afforded a broad reading so as not to frustrate the statute's underlying rationale").

The Court similarly erred in stating that the "well-pleaded complaint" rule applies as to whether federal law governs a case sufficient to support removal. (ECF Doc. 18 at 3.) This statement overlooks the Fifth Circuit's conclusion in *Latiolais v. Huntington Ingalls, Inc.*, that "section 1442(a) permits an officer to

---

1442(a). *Gasch v. Harford Acc. & Indem. Co.*, 491 F.3d 278, 279 (5th Cir. 2007); *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 306-078 (5th Cir. 2005).

remove a case even if no federal question is raised in the well-pleaded complaint, so long as the officer asserts a federal defense in the response".  951 F.3d 286, 290 (5th Cir. 2020).[8]  While a defendant seeking to demonstrate the bases for removal is not restricted by the well-pleaded complaint rule from offering evidence outside a plaintiff's complaint, it can nevertheless satisfy one of more of the bases by highlighting allegations in the complaint.  *Id.* at 290, 296; *see also Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001) ("A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them. Although a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention.").  Accordingly, ABS' Opposition cited to at least seven paragraphs of the Plaintiffs' First Amended Petition that specifically alleged that ABS was acting under the USCG (¶¶ 5.6, 5.7, 5.9) or performed inspections that ABS' supplementary evidence showed were regulatory inspections performed pursuant to the statutory delegation of authority from the USCG (¶¶ 5.8, 5.10, 5.12, and 6.3(h)).[9]  The Defendants respectfully submit that the Court may have overlooked both ABS' citations to the Plaintiffs' pleadings as well as the supplemental evidence offered, when the Court suggested that ABS was merely acting ***pursuant*** to federal regulation, rather than ***executing***

---

[8] ABS cited this standard on page 6 of its brief in opposition to Plaintiffs' Motion to Remand (ECF Doc. 12 at 14).
[9] *See* ECF Doc. 12 at 3-4, 9, 12-14; ECF Doc. 12-4 ¶¶ 6-12; ECF Doc. 12-5 ¶¶ 4-9.

***and enforcing*** federal law and regulations in performing regulatory vessel
inspections in place of the USCG.

As stated above, the allegations in the Plaintiffs' complaint and the
supplemental evidence ABS offered in opposition to the Motion to Remand
"easily" satisfy the "acting under" requirement for federal officer removal, where
ABS stood in the shoes of the USCG in performing regulatory vessel inspections.
*See Caris MPI*, 108 F.4th at 348.  "Delegated functions performed by, and
statutory certificates issued by [ABS] will be accepted as functions performed by,
or certificates issued by" the USCG.  46 C.F.R. § 8.130(a).  As explained in ABS'
Opposition, (ECF Doc. 12 at 15-16), and as stated above, the "acting under"
requirement is a broad phrase that should be liberally construed.  *Watson v. Philip
Morris Companies, Inc.*, 551 U.S. 142, 147 (2007); *Plaquemines Parish v. BP
America Prod. Co.*, 103 F.4th 324, 334 (5th Cir. 2024).  Although the relationship
between the federal agency/officer and defendant should be examined, a defendant
is ***not*** obligated to show that its conduct was precisely dictated by a federal
officer's directive.  *St. Charles Surgical Hosp., LLC*, 990 F.3d at 454.  A non-
government actor is "acting under" a federal agency where its actions "involve an
effort to assist, or to help carry out, the duties or tasks of a federal superior", *Glenn
v. Tyson Foods, Inc.*, 40 F.4th 230, 234 (5th Cir. 2022) (quoting *Watson*, 551 U.S.
at 152), or where it performs actions the government otherwise would have to

perform itself, *Caris MPI*, 108 F.4th at 348.  ABS unquestionably assists the

USCG in performing regulatory actions and does so by applying an extensive set

of statutes, conventions, and CFR regulations to the vessels it inspects, audits, and

reviews, so as to be "acting under" a federal officer.

Because the Court granted the Plaintiffs' Motion to Remand on the basis that

ABS was not "acting under" a federal officer, it declined to address the remaining

requirements for federal officer removal, namely (1) whether the conduct of ABS

charged by the Plaintiffs related to an act pursuant to a federal officer's directions,

or (2) whether ABS has a colorable federal defense.[10]  (ECF Doc 18 at 7.)

However, these two issues nevertheless are critical, and ABS respectfully requests

that the Court address them regardless of whether it ultimately is inclined to

reconsider its ultimate decision to remand.  To the extent ABS would exercise its

appellate rights, a fully developed record in this Court would enable the Fifth

Circuit to address all issues on the Motion to Remand at once, rather than

piecemeal.  For example, in *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457 (5th

Cir. 2016), the defendant appealed a district court's remand order, which had

concluded that the defendant was not "acting under" a federal officer and that the

charged conduct was not related to federal officer agency.  The Court of Appeals

---

[10] In their reply to the Defendants' Opposition, the Plaintiffs did not even try to rebut the
Defendants' arguments regarding their acting under a federal officer or the Defendants' colorable
federal defense.  A reasonable inference to draw from Plaintiffs' ignoring of these arguments is
that they were implicitly conceding those two issues.

concluded that the district court had erred on these two requirements for federal

officer removal, but remanded for further consideration by the district court on

whether the defendant had a colorable federal defense.  817 F.3d at 466.

As the Defendants amply demonstrated in their Notice of Removal and

Opposition to the Motion to Remand, the Plaintiffs' allegations of fault relate to

ABS' performance of regulatory inspections and reviews on behalf of and under

the guidance and subjection of the USCG, and Defendants have a colorable federal

defense.  As with the "acting under" requirement for federal officer removal, both

of these requirements are to be construed in favor of the federal forum.  "Like the

phrase 'relating to', the phrase 'connected or associated with' captures a broad

range of conduct".  *Plaquemines Parish*, 103 F.4th 324, 349 (5th Cir. 2024).  With

regard to the applicability of a federal defense, the Defendants do not have to

"prove" that the defense is applicable or even "clearly sustainable" at the removal

stage, only that it is colorable or plausible.  *Latiolais*, 951 F.3d at 296-97; *Winters*,

149 F.3d at 398-400; *see*, *also*, *Caris MPI*, 108 F.4th at 347 ("Though United's

defense is ultimately unavailing, it was colorable for purposes of federal officer

removal").

As stated in opposition to the motion to remand, (ECF Doc. 12 at 17),

Plaintiffs have specifically alleged that ABS "completed surveys on behalf of" the

USCG, (FAP ¶ 5.6, ECF Doc. 12-1), and "was delegated responsibility by the

17

United States for verifying [the Vessel's] compliance with the ISM Code and US

Regulations" (FAP ¶ 5.7).[11]   The Plaintiffs further alleged that "ABS was negligent

in its inspection, review, audit and classification of the vessel".  (FAP ¶ 6.1.)  As

explained in ABS' Opposition, (ECF Doc. 12 at 20-21), of these four types of

action alleged in paragraph 6.1, three involve ABS's wearing the hat of agent of the

USCG as a duly delegated Recognized Organization, as opposed to ABS's

classification hat.  (*See* O'Donnell Decl. ¶ 5.)  Plaintiffs also assert that the acts or

omissions of ABS serve as the basis for their counts of negligent misrepresentation

and gross negligence.  (FAP ¶¶ 6.5, 6.6, 6.9.)  Aside from highlighting the

Plaintiffs' allegations in their Opposition, ABS also offered the declarations of two

of its technical personnel to further demonstrate that its inspections, audits and

reviews of the Vessel, including the stability analyses that Plaintiffs cite in their

pleadings, were performed on behalf of the USCG pursuant to the authority

conferred by statute, regulation and agreement.  (*See* Gruber Decl. ¶¶ 6-10, ECF

Doc. 12-5; O'Donnell Decl. ¶¶ 5-12, ECF Doc. 12-4.)  The Defendants also

provided the Court with the USCG's formal publication of the delegation of

authority to ABS, which included the significant scope of the USCG's oversight of

---

[11] The Plaintiffs seek to obscure their own pleadings by inaccurately stating, without citation, that their "claims relate to ABS's negligence in inspecting the SEACOR Power pursuant to its own rules and standards".  Aside from surveying a vessel for compliance with classification society rules, Plaintiffs have specifically alleged that ABS inspected the Vessel on behalf of the USCG to "verif[y] compliance" with various international conventions. (FAP ¶¶ 5.5—5.10.)

ABS in performing the regulatory inspections.  (ECF Doc. 12 at 14-15.)  Just as

with the "acting under" requirement, these allegations, evidence and citations

addressed in ABS' Opposition "easily" satisfy the "related to" requirement and

"clearly show[]" that regulatory inspections were "connected or associated" with

the Plaintiffs' allegations of fault.  *Caris MPI*, 108 F.4th at 348.

The Plaintiffs' allegations, along with their exposition in the opposition

declarations and the citations to the extensive federal regulation that governs ABS'

regulatory inspections, distinguish this case from the decision in *Jackson v.*

*American Bureau of Shipping*, 20-cv-109, 2020 WL 1743541, 2020 U.S. Dist.

LEXIS 61621 (S.D. Tex. Apr. 8, 2020).  As explained in ABS' Opposition, (ECF

Doc. 12 at 21), the critical distinction is that the plaintiff pointed out that the ABS

report at the center of the case involved a survey for classification.  By contrast, in

the present case, Plaintiffs have expressly premised their claims on "inspection,

review, and audit" of the Vessel performed by ABS.  (FAP ¶ 6.1.)

Because ABS stands in the shoes of the USCG and executes the will of the

USCG when it performs the regulatory inspections, it is entitled to the same

immunity as a USCG employee performing the same inspection.  The full scope

and validity of the federal immunity defense available to the Defendants is not to

be decided at the removal stage, which is why Defendants are only required to

show a "colorable" defense.  As the Fifth Circuit held in *Winters*,

one of the most important functions of this right of removal is to allow
a federal court to determine the validity of an asserted official immunity
defense. Removal pursuant to § 1442(a)(1) is thus meant to ensure a
federal forum in any case where a federal official is entitled to raise a
defense arising out of his official duties. Furthermore, this right is not
to be frustrated by a grudgingly narrow interpretation of the removal
statute.

149 F.3d at 397 (citations and internal quotations omitted). ABS is a Recognized

Organization charged by statute and regulation to perform regulatory vessel

inspections in the place of the USCG. ABS's ultimate burden of proof on the

government immunity defense for service providers to the government is twofold:

(1) that its work was authorized and directed by the government; and (2) that its

work was performed pursuant to an Act of Congress. *Yearsley v. W.A. Ross Constr.*

*Co.*, 309 U.S. 18, 20 (1940); *Taylor Energy Co., LLC v. Luttrell*, 3 F.4th 172, 175

(5th Cir. 2021). ABS amply demonstrated both requirements above and in its

Opposition. (ECF Doc. 12 at 8-15.)

### CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court

reconsider its order dated July 18, 2024, remanding the case to the 190th Judicial

District Court of Harris County, Texas, and deny the motion in its entirety.


Respectfully submitted,

Dated: August 15, 2024

HILL RIVKINS LLP
Attorneys for Defendants
*American Bureau of Shipping; abs Group of*
*Companies, Inc.; ABSG Consulting, Inc.; ABS*
*Quality Evaluations, Inc.; and ABS Group*


___/s/ *John J. Sullivan*___
John J. Sullivan
SDTX I.D. No.: 1531846
Brian P. R. Eisenhower
SDTX I.D. No.: 3888867
Hannah E. Taylor
SDTX I.D. No. 3805262

HILL RIVKINS LLP
1000 N. Post Oak Rd., Suite 220
Houston, Texas 77055
Tel.:   713-222-1515
Fax:   713-222-1359
Email:       jsullivan@hillrivkins.com
             beisenhower@hillrivkins.com
             htaylor@hillrivkins.com


James M. Kimbell
SDTX ID No.: 1627

CLARK HILL PLC
1000 Louisiana Street, Suite 2800,
Houston, Texas 77002
Tel.:   713-951-5665
Fax:   832-397-3544
Email:       jkimbell@clarkhill.com

## CERTIFICATE OF CONFERENCE

Counsel for Defendants conferred with counsel for Plaintiffs regarding the relief sought in this motion and were informed that Plaintiffs are opposed to this motion.

/s/ *John J. Sullivan*
John J. Sullivan

## CERTIFICATE OF SERVICE

I hereby certify that on August 15, 2024, I electronically filed the foregoing document with the Clerk of Court for the United States District Court, Southern District of Texas, using the CM/ECF system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record, who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ *John J. Sullivan*
John J. Sullivan