## AGREEMENT GOVERNING THE DELEGATION OF
## STATUTORY CERTIFICATION AND SERVICES
## FOR UNITED STATES OF AMERICA FLAG SHIPS between the
## UNITED STATES COAST GUARD and the AMERICAN BUREAU OF SHIPPING

### 1    Authority & Application

This Agreement relies upon authority under 46 U.S.C. § 3316, 46 U.S.C. Subtitle II, Part B, Chapter 32, and 46 U.S.C. Subtitle II, Parts C and J. The Agreement sets forth the conditions for cooperation between the United States Coast Guard, hereinafter referred to as the "Administration," and the American Bureau of Shipping, hereinafter referred to as "ABS" or the "Recognized Organization" ("RO"), with respect to performing statutory certification and services on behalf of the Administration, as outlined in various provisions of the Code of Federal Regulations (CFR) [1] , prominently 46 CFR §§ 8.100-8.450, and the *Code for Recognized Organizations* (RO Code) (IMO Resolution MSC 349(92)/MEPC 237(65)). The Administration and the RO may also be referred to individually as "Party" or collectively as "Parties."

### 2    Purpose

The purpose of this Agreement is to delegate authority to the RO to perform statutory certification and services on behalf of the Administration and to define the scope, terms, conditions, and requirements of that delegation.

### 3    General conditions

3.1    Definitions:

.1    statutory certification and services means certificates issued, and services provided, on the authority of laws, rules and regulations set down by the Administration. This includes plan review, survey and/or audit leading to the issuance of, or in support of the issuance of, a certificate by or on behalf of a flag State as evidence of compliance with requirements contained in an international convention or national legislation. This includes certificates issued by an organization recognized by the flag State in accordance with the provisions of SOLAS regulation XI-1/1, and which may incorporate demonstrated compliance with the structural, mechanical and electrical requirements of the RO under the terms of its agreement of recognition with the flag State;[2]

.2    assessment means any activity to determine that the assessed entity fulfils the requirements of the relevant rules and regulations. In the context of this Agreement, an "assessed entity" refers to a U.S. flag ship or ship management company; and [3]

.3    in the context of this Agreement, "applicable instruments" refers to international conventions, international codes, and U.S. laws and regulations.

---

[1] Applicable Code of Federal Regulations provisions are listed in Appendix A.
[2] See 46 CFR 8.320 and RO Code Part 2, Section 1.3.
[3] See RO Code Part 2, Section 1.4.

EXHIBIT

1

3.2    The RO shall determine the compliance of an assessed entity with the requirements of applicable instruments, as set out in this Agreement and its Appendices.

3.3    In so far as the statutory certification and services covered by this Agreement are concerned, the RO agrees to cooperate with port State control Authorities to facilitate the rectification of reported deficiencies or other discrepancies on behalf of the Administration when so requested, and report to the Administration.

3.4    Statutory services rendered and statutory certificates issued by the RO will be accepted as services rendered by, or certificates issued by, the Administration provided that the RO maintains compliance with the provisions of the RO Code and the national requirements.

3.5    The RO must maintain the minimum standards, conditions, and other requirements as set out in this Agreement and its Appendices.  This includes:

    .1    Load Line Assignment: the conditions and standards of 46 CFR § 42.07-35, as listed in Appendix B, for functions delegated pursuant to 46 U.S.C. § 5107;

    .2    Tonnage Measurement: the requirements of 46 CFR § 69.27, as listed in Appendix C, for functions delegated pursuant to 46 U.S.C. § 14103;

    .3    Inspection Alternatives: to be considered a Recognized Organization the RO must meet the conditions and standards of 46 CFR § 8.130 and 46 CFR § 8.230, as listed in Appendix B, to be delegated functions pursuant to 46 U.S.C. § 3316; and

    .4    Safety Management: the conditions and standards of 46 CFR §§ 8.130 and 8.230 and 33 CFR §§ 96.410, 96.460, 96.470, 96.480, and 96.490, as listed in Appendices B and D, to be delegated functions pursuant to 46 U.S.C. § 3316.

3.6    The minimum standards, conditions, and other requirements found within Appendices B, C, and D to this Agreement may be added to, but not reduced by, this Agreement.

## 4    The execution of functions under authorization

4.1    Functions in accordance with the general authorization:

    .1    the RO is hereby authorized to carry out statutory certification and services on behalf of the Administration with respect to U.S. flag ships, and/or companies responsible for operating such ships, to the extent specified in Appendix A to this Agreement and to require repairs to such ships in accordance with the applicable instruments;

    .2    surveys shall be carried out in accordance with applicable instruments and where applicable, the *Survey Guidelines under the Harmonized System of Survey and Certification, 2017* (IMO Resolution A.1120(30)), as may be amended); and

    .3    the RO is authorized to take relevant control measures in accordance with its standard procedures or as explicitly advised otherwise by the Administration, as is

necessary to ensure that matters subject to surveys, audits and inspections correspond substantially with the particulars of the ship's certificates or the requirements of the applicable instruments.

4.2    Functions in accordance with special (additional) authorization:

Authorizations for services outside the scope of Appendix A to this Agreement will be dealt with as mutually agreed on a case-by-case basis.

4.3    Relationship between the Recognized Organization's statutory and other related activities:

The RO and its staff shall not engage in any activities that may constitute a conflict of interest with their independence of judgment and integrity in relation to their statutory certification and services. The RO and its staff responsible for carrying out the statutory certification and services shall not be the designer, manufacturer, supplier, installer, purchaser, owner, user, or maintainer of the item subject to the statutory certification and services, or an authorized representative of any of these parties.  The RO shall not be substantially dependent on a single commercial enterprise for its revenue.

## 5    Legal basis of the functions under authorization

5.1    Acts, regulations and supplementary provisions:

This Agreement is made pursuant to the statutory and regulatory authorities as set out in Appendices A – D to this Agreement and any supplementary provisions made by the Administration. [1]

5.2    Interpretations:

    .1    interpretation of the applicable instruments, as well as determining the acceptability of proposed equivalents or the acceptance of substitutes to the requirements of the applicable instruments, is the prerogative of the Administration.  The RO will cooperate in their establishment as necessary; and

    .2    interpretation of definitions or requirements found in this Agreement is the prerogative of the Administration.  The RO will be given the opportunity to consult with the Administration regarding the interpretation.

5.3    Deviations and equivalent solutions:

    .1    exemptions and deviations from, and equivalents to, the requirements of the applicable instruments are the prerogative of the Administration and must be approved by the Administration prior to issuance of associated certificates or documentation;

    .2    requests for exemptions, waivers, equivalencies or relaxations shall be forwarded to the Administration for review and approval prior to execution.  Such requests

---

[1] This Agreement is in compliance with the RO Code.

must include supporting information and a recommendation from the RO concerning approval; and

.3 in instances where, temporarily, the requirements of an applicable instrument cannot be met under the particular circumstances, the RO will specify such measures or supplementary equipment as may be available to permit the ship to proceed to a suitable port where permanent repairs or rectifications can be effected or replacement equipment fitted. Authorization to proceed is reserved for the Administration.

## 6 Reporting to the Administration pursuant to this Agreement

6.1 Procedures for reporting in the case of general authorization:

The RO shall establish relevant procedures for reporting to the Administration in the case of general authorization, in accordance with the requirements of applicable instruments and the additional requirements of the Administration.

6.2 Procedures for reporting in the case of special (additional) authorization:

The RO shall establish relevant procedures for reporting to the Administration in the case of special (additional) authorization, in accordance with the requirements of applicable instruments and the additional requirements of the Administration accompanying each special (additional) authorization.

6.3 Reporting on classification of ships:

The RO shall report assignment of, changes to, and withdrawals from class, as applicable. See specific requirements of sections 6.5.6 and 6.5.7 of this Agreement.

6.4 Reporting on ships not fit to proceed to sea:

The RO shall report cases where a ship did not in all respects remain fit to proceed to sea without danger to the ship or persons on board, or a ship presents an unreasonable threat of harm to the environment. See specific requirements of sections 6.5.2 through 6.5.5.

6.5 Other reporting:

.1 the RO shall notify the Administration immediately upon receiving a request for classification of a U.S. flag ship subject to statutory certification and services;

.2 the RO shall notify the Administration immediately upon becoming aware of a situation involving a major deficiency or serious safety-related issue that would normally be considered sufficient to detain a ship from proceeding to sea pending correction;

.3 the RO shall notify the Administration immediately upon becoming aware of a situation aboard a ship or within a company involving a major non-conformity. Unless otherwise specified by the applicable instrument, major non-conformity

means, "an identifiable deviation which poses a serious threat to personnel or vessel safety or a serious risk to the environment and requires immediate corrective action; in addition, the lack of effective and systematic implementation of a requirement of the International Safety Management (ISM) Code is also considered a major non-conformity." [1]

.4    the above notifications shall contain the name of the ship or company, the IMO number, the official number, if applicable, or alternatively another distinct vessel identification number, the company identification number, and a description of the major non-conformity, deficiency or issue;

.5    the RO shall inform the Administration, as soon as possible, of any dangerous occurrences, accidents, machinery or structural breakdowns, or failures that they are aware of on a ship;

.6    the RO shall report to the Administration in writing the names, IMO numbers, and official numbers, if applicable, or alternatively other distinct vessel identification numbers of any ships removed from the RO's list of classed/certified ships for which the RO has performed statutory certification and services on behalf of the Administration. The report should contain a description of the reason(s) for removal from class, and this should be made within thirty (30) days of the removal becoming effective; and

.7    in cases of transfer of the certification of a ship from one RO to another, if the RO is the gaining organization, the RO shall advise the Administration within one month of the issuance of the certificates. If the RO is the losing organization, then the RO shall advise the Administration of the date of issuance of the certificates, and confirm the date, place, and any action taken to satisfy each overdue survey, overdue recommendation, and overdue condition of class.

## 7    Development of rules and/or regulations - Information

7.1    Cooperation in connection with development of rules and/or regulations – liaison meetings:

The RO shall allow participation in the development and review of its rules, procedures and/or regulations, specifically in the review process prior to finalization, by representatives of the Administration.

7.2    Exchange of rules and information:

.1    the Administration will provide the RO with all necessary documentation for the purpose of the RO's performance of statutory certification and services, and notify the RO of any additions, deletions, or revisions thereto in advance of their effective date and specify whether the Administration's standards exceed convention requirements in any respect.

---

[1] This definition of a major non-conformity is a reproduction of the definition found in 33 CFR § 96.120

.2     the Administration shall be granted access to all plans and documents including reports and records on surveys, audits and inspections on the basis of which certificates are, or have been issued or endorsed by the RO;

.3     the RO shall provide free electronic access to the editions of its rules and/or regulations applicable to ships under the scope of authorization in Appendix A to this Agreement and listing of ships in its class; and

.4     the RO and the Administration, recognizing the importance of technical liaison, agree to cooperate towards this end and maintain an effective dialogue.

7.3     Language and form:

The RO shall establish, publish, and systematically maintain its rules and/or regulations printed and/or in electronic environment, an up-to-date version of which shall be provided in the English language, for the design, construction and certification of ships and their associated essential engineering systems. All other documentation issued by or requested from the RO pursuant to this Agreement shall be in the English language.

## 8     Other conditions

8.1     Remuneration:

Unless agreed otherwise, the Administration will not provide remuneration for delegated statutory certification and services carried out by the RO. The RO shall provide the Administration, upon request, with a current copy of the fee schedules, including changes to the schedule, for all functions delegated under this Agreement.

8.2     Rules for administrative proceedings:

The RO shall have a documented process to address appeals related to statutory certification and services in accordance with the requirements of the Administration.

8.3     Confidentiality:

In the event that, during the course of fulfilling its obligations under this Agreement, the RO submits Confidential Commercial Information (CCI) to the Administration, the Administration will protect, safeguard, and hold confidential such information in accordance with the provisions of the Freedom of Information Act (FOIA) at 5 U.S.C. § 552(b)(4) (Exemption 4) and Department of Homeland Security FOIA implementing regulations at 6 CFR § 5.7. When submitting CCI, the RO must use "good faith efforts to designate by appropriate markings, either at the time of submission or within a reasonable time thereafter, any portion of its submission that it considers to be protected from disclosure under Exemption 4." 6 CFR § 5.7(b). If the Administration receives a FOIA request for RO submitted CCI, the Administration will provide notice to the RO and will work with the RO to determine appropriate disclosure limitations.

8.4     Liability and financial responsibility:

      .1      while acting for the Administration under the authority of this Agreement the RO shall be free to create contracts directly with its clients and such contracts may contain the RO's normal contractual conditions for limiting its legal liability. However, neither this Agreement, its Appendices, nor such contractual provisions shall be interpreted as an indemnification of the RO by the Administration;

      .2      in the context of this Agreement, a professional indemnity or professional liability insurance is to be effected by the RO; and

      .3      if the Administration is sued for activities connected with this Agreement, the Administration shall immediately provide notice to the RO, and shall not impede the RO's exercise of legal rights afforded it under U.S. law.

8.5     Entry into force:

This Agreement commences upon date of signature, and supersedes the Memorandum of Understanding between ABS and the Coast Guard dated January 12, 1995. In the event any other previously signed agreement is in conflict with this Agreement then this Agreement takes precedent.

8.6     Termination:

      .1      this Agreement may be terminated by either Party by giving the other Party sixty (60) days written notice. The Administration may invoke termination in accordance with section 8.7.

      .2      in the case of authorization to issue an ISM certificate this under 33 CFR Part 96, the Administration may terminate the RO's authorization to issue that certificate in accordance with 33 CFR §§ 96.470-96.495.

8.7     Breach of Agreement:

If this Agreement is breached by one of the Parties, the other Party will notify the violating Party of its breach in writing to allow the notified Party the opportunity to remedy the breach within ninety (90) days, failing which the notifying Party has the right to terminate the Agreement immediately.

      .1      revocation of this Agreement and/or any delegated functions thereto may be made in the event of, but not limited to, the RO's failure to maintain the minimum standards, other requirements, or conditions of this Agreement and its Appendices, as applicable.

      .2      if termination of this Agreement is invoked by the Administration, the RO will be provided with the opportunity to address/appeal conditions of termination identified by the Administration and where appropriate, demonstrate that reasonable steps have been taken to resolve the conditions for revocation.

8.8     Settlement of disputes:

The Agreement shall be governed by and construed in accordance with United States law. Any dispute arising in connection with this Agreement which cannot be settled by private negotiations between the Parties shall be settled finally by the tribunal (courts) as applicable.

8.9     Use of subcontractors:

.1      except as indicated in the sub-sections which follow, the RO shall perform statutory certification and services by the use of only exclusive surveyors and auditors, being persons solely employed by the RO, duly qualified, trained and authorized to execute all duties and activities incumbent upon their employer, within their level of work responsibility;

.2      if the RO finds in exceptional and duly justified cases that its own exclusive surveyor is not available, the RO shall inform the Administration who may then nominate an exclusive surveyor of another RO; and

.3      in accordance with applicable instruments, the RO may choose to outsource any service that affects conformity to requirements or accepts work of a third party approved by the RO. The RO shall ensure that it fully controls the performance of such services through its quality management system. For the purpose of accountability to the Administration, the work performed by the sub-contracted organization or service supplier constitutes the work of the RO.

8.10    Amendments:

Amendments to this Agreement and the Appendices will become effective only after consultation and written agreement between the Administration and the RO. This Agreement or Appendix A to this Agreement may be amended independently from each other. In the event that the regulations included in Appendices B, C, or D are amended in the Code of Federal Regulations, any changes will be considered in effect upon the publication of the final rule. The corresponding appendix to this Agreement will be updated to reflect those changes as soon as practicable.

## 9.     Specification of the authorization from the Administration to the RO

Appendix A to this Agreement specifies the scope of authorization.

## 10.    The Administration's supervision of authorities delegated to the RO

The Administration shall be entitled to satisfy itself that the RO is performing its services in compliance with applicable instruments and this Agreement by establishing, or participating in, an RO oversight program for the purpose of supervising the authorities delegated to the RO under this Agreement by audits, inspections, supplementary surveys, quality cases, vertical contract audits or other monitoring activities. For the purpose of this section:

.1      the Administration shall have access to the documentation of the quality management system of the RO;

.2      the Administration shall have access to the internal instructions, circulars and guidelines of the RO;

.3      the Administration shall have access to the RO's documentation relevant to the Administration's fleet;

.4      the RO shall fully cooperate with the Administration's inspection and verification work;

.5      the RO shall keep appropriate information and statistics such as, but not limited to, damage and casualties, relevant to the Administration's fleet; and

.6      the RO shall keep the information and statistics of port State control detentions and notified deficiencies allocated to the responsibility of the RO.

## 11.    Points of Contact

For the United States Coast Guard                    For the American Bureau of Shipping

Name:   Office of Commercial Vessel Compliance    ABS Western Hemisphere
Address: 2703 Martin Luther King Jr Ave SE         1701 City Plaza Drive
           Washington, DC 20593                    Spring, TX 77389
E-mail:   flagstatecontrol@uscg.mil                WHSurveyMarine@eagle.org

## 12.    Approving Officials

For the United States Coast Guard                    For the American Bureau of Shipping

on ___MARCH 6TH, 2020___               on __Merch 20, 2020__
Richard V. Timme                                   Mr. Christopher J. Wiernicki
Rear Admiral, U.S. Coast Guard                      Chairman, President and
Assistant Commandant for Prevention Policy          Chief Executive Officer
                                                    American Bureau of Shipping

**Appendix A of the**

**AGREEMENT GOVERNING THE DELEGATION OF**

**STATUTORY CERTIFICATION AND SERVICES**

**FOR UNITED STATES OF AMERICA FLAG SHIPS between the**

**UNITED STATES COAST GUARD and the**

**AMERICAN BUREAU OF SHIPPING**

Dated ___**MAR 0 6 2020**___, 2020, with effect from _____, 2020, covering the:

**APPLICABLE INSTRUMENTS**

**and**

**SCOPE OF AUTHORIZATION**

**1    Scope of Authorization**

Pursuant to, and in accordance with, the Agreement and applicable instruments, and law and regulations as set out in Tables 1 and 2 of this appendix, the RO is authorized to carry out the associated statutory certification and services in Table 1 and 2 on behalf of the Administration, along with the additional authorizations as set out in section 2 of this appendix. This includes empowerment of the RO to require repairs and perform plan review, stability review, inspection, survey, and audits of assessed entities which may lead to the issuance of, or be in support of, an applicable statutory certificate by or on behalf of the United States. It is incumbent upon the RO to understand and follow the requirements of conventions, and laws and regulations set forth within Tables 1 and 2, and it is the Administration's prerogative to ensure the RO is properly administering the requirements of the conventions, and laws and regulations.

| Table 1 - International Instruments and Statutory Certifications and Services |
|---|
| **1    The International Convention on Load Lines, 1966, as modified by the 1988 Protocol, as amended  (ICLL66/88)** |
| 1.1    International Load Line Certificate |
| **2    International Convention on Tonnage Measurement of Ships, 1969, as amended (TM69)** |
| 2.1    International Tonnage Certificate (1969) |

| 3 | **International Convention for the Safety of Life at Sea, 1974, and Protocols of 1978 & 1988, as amended (SOLAS 74/78)** |
|---|---|
| | 3.1 Cargo Ship Safety Construction Certificate |
| | 3.2 Cargo Ship Safety Equipment Certificate |
| | 3.3 Passenger Ship Safety Certificate |
| | 3.4 Document of Compliance for ships carrying dangerous goods according to International Maritime Solid Bulk Cargoes Code (IMSBC Code) and SOLAS 1974 as amended, regulation II-2/19 |
| | 3.5 Approval of Cargo Securing Manual |
| | 3.6 International Certificate for the Carriage of Dangerous Chemicals in Bulk according to the International Code for the Construction and Equipment of Ships Carrying Dangerous Chemicals In Bulk (IBC Code) |
| | 3.7 International Certificate for the Carriage of Liquefied Gases in Bulk according to the International Code for the Construction and Equipment of Ships Carrying Liquefied Gases in Bulk (IGC Code) |
| | 3.8 Document of Compliance Certificate and Interim Certificate according to the International Management Code for the Safe Operation of Ships and for Pollution Prevention (ISM Code) |
| | 3.9 Safety Management Certificate and Interim Certificate according to the International Management Code for the Safe Operation of Ships and for Pollution Prevention (ISM Code) |
| | 3.10 Authorize service providers for lifesaving appliances (LSA) according to MSC.402(96) |
| | 3.11 Conduct periodic audits on authorized service providers for LSA according to MSC.402(96) |
| 4 | **International Convention for the Prevention of Pollution from Ships, 1973, as modified by the Protocol of 1978, as amended  (MARPOL 73/78)** |
| | 4.1 Annex I - International Oil Pollution Prevention (IOPP) Certificate |
| | 4.2 Annex II - International Pollution Prevention Certificate for the Carriage of Noxious Liquid Substances in Bulk (NLS) |
| | 4.3 Annex III – Verification of Compliance for the Carriage of Harmful Substances in Package Form |
| | 4.4 Annex IV - International Sewage Pollution Prevention Statement of Voluntary Compliance (SOVC) |
| | 4.5 Annex V – Approval of Garbage Management Plan |
| | 4.6 Annex VI - International Air Pollution Prevention (IAPP) Certificate |
| | 4.7 Annex VI - International Energy Efficiency (IEE) Certificate |
| | 4.8 Annex VI – Statement of Compliance for Ship Fuel Oil Consumption Reporting |
| 5 | **International Convention on the Control of Harmful Anti-fouling Systems on Ships (AFS)** |
| | 5.1 International Anti-Fouling System (IAFS) Certificate |

| 6 | **Other Codes, Conventions and Guidelines** |
|---|---|
| 6.1 | Polar Ship Certificate according to the International Code for Ships Operating in Polar Waters (Polar Code) |
| 6.2 | Mobile Offshore Drilling Unit Safety Certificate (1979), Mobile Offshore Drilling Unit Safety Certificate (1989), or the Mobile Offshore Drilling Unit Safety Certificate (2009) according to the IMO Code for the Construction and Equipment of Mobile Offshore Drilling Units, 1979, 1989 and 2009, as amended (MODU Code) |
| 6.3 | Certificate of Fitness for the Transport and Handling of Limited Amounts of Hazardous and Noxious Liquid Substances in Bulk on Offshore Support Vessels according to IMO Resolution A.673(16), as amended |
| 6.4 | Statement of Voluntary Compliance (SOVC) with Ballast Water Management Convention |
| 6.5 | Document of Compliance for Offshore Supply Vessels according to IMO Resolution MSC.235(82) |

| **Table 2 - U.S. Instruments** | |
|---|---|
| **1** | **United States Code (U.S.C.)** |
| | 33 U.S.C. § 1901-1911 Prevention of Pollution from Ships |
| | 46 U.S.C. § 3316 - Classification Societies |
| | 46 U.S.C. Subtitle II, Part C - Load Lines of Vessels |
| | 46 U.S.C. Subtitle II, Part J - Measurement of Vessels |
| | 46 U.S.C. Subtitle II, Part B, Chapter 32 - Management of Vessels |
| **2** | **United States Code of Federal Regulations (CFR)** |
| 2.1 | 33 CFR Chapter I, Subchapter F, Part 96, Subpart D – Authorization of Recognized Organizations to Act on behalf of the U.S. |
| 2.2 | 33 CFR Chapter I, Subchapter O, Part 151, Subpart A – Implementation of MARPOL 73/78 and the Protocol on Environmental Protection to the Antarctic Treaty as it Pertains to Pollution from Ships |
| 2.3 | 46 CFR Chapter I, Subchapter A, Part 8, Subpart D – Alternate Compliance Program |
| 2.4 | 46 CFR Chapter I, Subchapter E, – Load Lines |
| 2.5 | 46 CFR Chapter I, Subchapter D, – Tank Vessels |
| 2.6 | 46 CFR Chapter I, Subchapter G, Part 69 – Measurement of Vessels |
| 2.7 | 46 CFR Chapter I, Subchapter H, – Passenger Vessels |
| 2.8 | 46 CFR Chapter I, Subchapter I, – Cargo and Miscellaneous Vessels |
| 2.9 | 46 CFR Chapter I, Subchapter I-A, – Mobile Offshore Drilling Vessels |
| 2.10 | 46 CFR Chapter I, Subchapter L, – Offshore Supply Vessels |
| 2.11 | 46 CFR Chapter I, Subchapter O, – Certain Bulk Dangerous Cargoes |
| 2.12 | 46 CFR Chapter I, Subchapter U, – Oceanographic Research Vessels |

**2      Additional Authorizations**

2.1     Alternate Compliance Program (ACP):

.1          pursuant to, and in accordance with, the applicable instruments as set out in Table 2, the RO is authorized to participate in the ACP, as outlined in Title 46, United States Code of Federal Regulations (CFR), Chapter I, Subchapter A, Part 8, Subpart D, Alternate Compliance Program, and perform the statutory certifications and services in accordance with international instruments as set out in Table 1. ACP enrollment is authorized for U.S. flag vessels inspected, or to be inspected, for international voyages.  Vessels with novel or especially complex designs or operations, and for which the RO has no rules and/or the Coast Guard has no regulations or policies developed, are generally not eligible to enroll in the ACP. However, the Administration may choose to enroll such vessels subject to a Design Basis Agreement (DBA) [1] on a case-by-case basis.

.2          the RO is authorized to conduct plan review and approval, initial and subsequent surveys, periodic re-inspections and examinations in the assessment of compliance with applicable instruments relevant to the following categories of U.S. flag vessels enrolled in the ACP:

.1          Tank Vessels inspected in accordance with 46 CFR Chapter I, Subchapter D, § 31.01-3 - Alternate Compliance;

.2          Passenger Vessels inspected in accordance with 46 CFR Chapter I, Subchapter H, § 71.15-5 - Alternate Compliance;

.3          Cargo and Miscellaneous Vessels inspected in accordance with 46 CFR Chapter I, Subchapter I, § 91.15-5 - Alternate Compliance;

.4          Mobile Offshore Drilling Units inspected in accordance with 46 CFR Chapter I, Subchapter I-A, § 107.205 - Alternate Compliance;

.5          Offshore Supply Vessels inspected in accordance with 46 CFR Chapter I, Subchapter L, § 126.235 - Alternate Compliance; and

.6          Oceanographic Research Vessels inspected in accordance with 46 CFR Chapter I, Subchapter U, § 189.15-5 - Alternate Compliance.

.3          in addition to the conditions set out in the Agreement and the requirements set out in the applicable instruments, the following conditions will be adhered to in the execution of this authorized function on behalf of the Administration:

---

[1] DBAs rely upon the Administration's equivalency authorities under domestic regulations and international conventions.  DBA is a term used by the Administration to describe the document that memorializes any equivalencies and alternatives the Administration will accept for novel designs or configurations as at least effective as that specified in the applicable regulations or international conventions for the purpose of inspection and certification.

.1       all requests for exemptions, waivers, equivalencies or relaxations shall be forwarded to the Administration for approval in accordance with Navigation and Vessel Inspection Circular 2-95, Change 3, or subsequently updated policy guidance. Such requests must include supporting information and a recommendation from the RO concerning approval;

.2       the RO shall submit for approval to the Administration proposed changes to any supplemental requirements to RO class rules that may affect any vessel inspection or certification activity by the RO under this Agreement;

.3       the RO shall, in addition to the requirements of class rules and applicable conventions, apply the supplemental requirements contained in the Administration's approved U.S. Supplement when performing any authorized function on behalf of the Administration pertaining to the survey and certification of U.S. flagged vessels enrolled in the ACP; and

.4       these conditions may be modified as deemed necessary by the Administration, and documented in an update to this Appendix.

2.2    National Load Line Assignments:

Pursuant to, and in accordance with, the applicable instruments as set out in Table 2 of this appendix, the RO is authorized to assign domestic U.S. load lines, including Special Service and Great Lakes load lines, on the Administration's behalf.[2]

2.3    National Tonnage Measurement:

Pursuant to, and in accordance with, the applicable instruments as set out in Table 2 of this appendix, the RO is authorized to issue national tonnage certificates on the Administration's behalf.

2.4    Policy Documents:

In addition to the applicable instruments listed in Tables 1 and 2 of this appendix, the Administration may issue policy documents to direct the RO in the performance of statutory certification and services. The Administration reserves the right to define and deconflict the language or requirements of these policies and any applicable instrument, and to modify policy as necessary.

## 3.    Degree of Authorization

The RO is granted authorization to perform the statutory certification and services provided for under this appendix and as applicable through issued policies.

---

[2] See 46 U.S.C. § 5107.

Appendix **A** Page **5** of **6**

## 4. Approving Officials

For the United States Coast Guard

on _____ MARCH 6TH, 2020 _____

Richard V. Timme
Rear Admiral, U.S. Coast Guard
Assistant Commandant for Prevention Policy

For the American Bureau of Shipping

on _____ March 20, 2020 _____

Mr. Christopher J. Wiernicki
Chairman, President and
Chief Executive Officer
American Bureau of Shipping

# Appendix B[1] of the

## AGREEMENT GOVERNING THE DELEGATION OF
## STATUTORY CERTIFICATION AND SERVICES
## FOR UNITED STATES OF AMERICA FLAG SHIPS between the
## UNITED STATES COAST GUARD and the
## AMERICAN BUREAU OF SHIPPING

Dated   **MAR 0 6 2020**  , 2020, with effect from _____, 2020, covering the:

## AGREEMENT CONDITIONS

### and

## MINIMUM STANDARDS OF A RECOGNIZED ORGANIZATION

1      **Agreement Conditions – 46 CFR § 8.130**

(a) Delegated functions performed by, and statutory certificates issued by, a recognized organization will be accepted as functions performed by, or certificates issued by, the Administration, provided that the recognized organization maintains compliance with all provisions of its agreement with the Administration. Any agreement between the Administration and a recognized organization authorizing the performance of delegated functions will be written and will require the recognized organization to comply with each of the following:

(1) Issue any certificates related to a delegated function in the English language.

(2) Maintain a corporate office in the United States that has adequate resources and staff to support all delegated functions and to maintain required associated records.

(3) Maintain all records in the United States related to delegated functions conducted on behalf of the Administration.

(4) Make available to appropriate Administration representatives vessel status information and records, including outstanding vessel deficiencies or recognized organization recommendations, in the English language, on all vessels for which the recognized organization has performed any delegated function on behalf of the Administration.

---

[1] This Appendix is a reproduction of the regulations found in 46 CFR § 8.130 and 46 CFR § 8.230 upon date of signature of the Agreement. The terms "authorized classification society" and "recognized classification society" have been replaced with the term "recognized organization." Furthermore, the terms "Commandant" and "Coast Guard" have been replaced with the term "Administration." These changes have been made for the purpose of maintaining consistent terminology throughout the Agreement and Appendices, and are not intended to change the meaning of the regulation in any way.

(5) Report to the Administration the names and official numbers of any vessels removed from class for which the recognized organization has performed any delegated function on behalf of the Administration and include a description of the reason for the removal.

(6) Report to the Administration all port state detentions on all vessels for which the recognized organization has performed any delegated function on behalf of the Administration when aware of such detention.

(7) Annually provide the Administration with its register of classed vessels.

(8) Ensure vessels meet all requirements for class of the accepting recognized organization prior to accepting vessels transferred from another recognized organization.

(9) Suspend class for vessels that are overdue for special renewal or annual survey.

(10) Attend any vessel for which the recognized organization has performed any delegated function on behalf of the Administration at the request of the appropriate Administration officials, without regard to the vessel's location—unless prohibited to do so under the laws of the United States, the laws of the jurisdiction in which the vessel is located, the recognized organization's home country domestic law, or where the recognized organization considers an unacceptable hazard to life and/or property exists.

(11) Honor appeal decisions made by the Administration on issues related to delegated functions.

(12) Apply U.S. flag Administration interpretations, when they exist, to international conventions for which the recognized organization has been delegated authority to certificate or perform other functions on behalf of the Administration.

(13) Obtain approval from the Administration prior to granting exemptions from the requirements of international conventions, class rules, and the U.S. supplement to class rules.

(14) Make available to the Administration all records, in the English language, related to equivalency determinations or approvals made in the course of delegated functions conducted on behalf of the Administration.

(15) Report to the Administration all information specified in the agreement at the specified frequency and to the specified Administration office or official.

(16) Grant the Administration access to all plans and documents, including reports on surveys, on the basis of which certificates are issued or endorsed by the recognized organization.

(17) Identify a liaison representative to the Administration.

(18) Provide regulations, rules, instructions and report forms in the English language.

(19) Allow the Administration to participate in the development of class rules.

(20) Inform the Administration of all proposed changes to class rules.

(21) Provide the Administration the opportunity to comment on any proposed changes to class rules and to respond to the recognized organization's disposition of the comments made by the Administration.

(22) Furnish information and required access to the Administration to conduct oversight of the recognized organization's activities related to delegated functions conducted on behalf of the Administration.

(23) Allow the Administration to accompany them on internal and external quality audits and provide written results of such audits to appropriate Administration representatives.

(24) Provide the Administration access necessary to audit the recognized organization to ensure that it continues to comply with the minimum standards for a recognized organization.

(25) Use only exclusive surveyors of that recognized organization to accomplish all work done on behalf of, or under any delegation from, the Administration. For tonnage-related measurement service only, however, classification societies may use part-time employees or independent contractors in place of exclusive surveyors.

(26) Allow its surveyors to participate in training with the Administration regarding delegated functions.

(b) Amendments to an agreement between the Administration and a recognized organization will become effective only after consultation and written agreement between parties.

(c) Agreements may be terminated by one party only upon written notice to the other party. Termination will occur sixty days after written notice is given.

## 2    Minimum Standards of a Recognized Organization – 46 CFR § 8.230

(a) In order to receive recognition by the Administration a recognized organization must:

(1) Establish that it has functioned as an international recognized organization for at least 30 years with its own class rules;

(2) Establish that it has a history of appropriate corrective actions in addressing vessel casualties and cases of nonconformity with class rules;

(3) Establish that it has a history of appropriate changes to class rules based on their application and the overall performance of its classed fleet;

(4) Have a total classed tonnage of at least 10 million gross tons;

(5) Have a classed fleet of at least 1,500 ocean-going vessels over 100 gross tons;

(6) Have a total classed tonnage of ocean-going vessels over 100 gross tons totaling no less than 8 million gross tons;

(7) Publish and maintain class rules in the English language for the design, construction and certification of ships and their associated essential engineering systems;

(8) Maintain written survey procedures in the English language;

(9) Have adequate resources, including research, technical, and managerial staff, to ensure appropriate updating and maintaining of class rules and procedures;

(10) Have adequate resources and geographical coverage to carry out all plan review and vessel survey activities associated with delegated functions as well as recognized organization requirements;

(11) Employ a minimum of 150 exclusive surveyors;

(12) Have adequate criteria for hiring and qualifying surveyors and technical staff;

(13) Have an adequate program for continued training of surveyors and technical staff;

(14) Have a corporate office in the United States that provides a continuous management and administrative presence;

(15) Maintain an internal quality system based on ANSI/ASQC Q9001 or an equivalent quality standard;

(16) Determine classed vessels comply with class rules, during appropriate surveys and inspection;

(17) Determine that attended vessels comply with all statutory requirements related to delegated functions, during appropriate surveys and inspection;

(18) Monitor all activities related to delegated functions for consistency and required end-results;

(19) Maintain and ensure compliance with a Code of Ethics that recognizes the inherent responsibility associated with delegation of authority;

(20) Not be under the financial control of shipowners or shipbuilders, or of others engaged commercially in the manufacture, equipping, repair or operation of ships;

(21) Not be financially dependent on a single commercial enterprise for its revenue;

(22) Not have any business interest in, or share of ownership of, any vessel in its classed fleet; and

(23) Not be involved in any activities which could result in a conflict of interest.

Appendix **B** Page **4** of **5**

(b) Recognition may be granted after it is established that the recognized organization has an acceptable record of vessel detentions attributed to recognized organization performance under the Administration Port State Control Program.

# Appendix C[1] of the

## AGREEMENT GOVERNING THE DELEGATION OF
## STATUTORY CERTIFICATION AND SERVICES
## FOR UNITED STATES OF AMERICA FLAG SHIPS between the
## UNITED STATES COAST GUARD and the
## AMERICAN BUREAU OF SHIPPING

Dated ___MAR 0 6 2020___, 2020, with effect from _____, 2020, covering the:

## DELEGATION OF AUTHORITY TO MEASURE VESSELS

**1  Statutory Authority – 46 CFR § 69.27(a)**

Under 46 U.S.C. 14103, the Administration is authorized to delegate to a "qualified person" the authority to measure and certify U.S. flag vessels under this part.

**2  Delegation to Measurement Organizations – 46 CFR § 69.27(b)**

Authority to measure and certify U.S. flag vessels under the Convention Measurement System and Standard and Dual Regulatory Measurement Systems may be delegated to an organization that—

(1) Is a full member of the International Association of Classification Societies (IACS);

(2) Is incorporated under the laws of the United States, a State of the United States, or the District of Columbia;

(3) In lieu of the requirements in paragraphs (b)(1) and (2) of this section, is a recognized organization under the requirements of 46 CFR part 8.

(4) Is capable of providing all measurement services under the Convention Measurement System and Standard and Dual Regulatory Measurement Systems for vessels domestically and internationally;

(5) Maintains a tonnage measurement staff that has practical experience in measuring U.S. flag vessels under the Convention Measurement System and Standard and Dual Regulatory Measurement Systems; and

(6) Enters into a written agreement, as described in paragraph (d) of this section.

---

[1] This Appendix is a reproduction of the regulations found in 46 CFR § 69.27 upon date of signature of the Agreement. The terms "vessel tonnage measurement organization" and "recognized classification society" have been replaced with the term "recognized organization." Furthermore, the terms "Commandant" and "Coast Guard" have been replaced with the term "Administration." These changes have been made for the purpose of maintaining consistent terminology throughout the Agreement and Appendices, and are not intended to change the meaning of the regulation in any way.

**3      Applying for Delegation – 46 CFR § 69.27(c)**

Applications for delegation of authority under this section must be forwarded to the Administration and include the following information on the organization:

(1) Its name and address.

(2) Its organizational rules and structure.

(3) The location of its offices that are available to provide measurement services under the Convention Measurement System and Standard and Dual Regulatory Measurement Systems.

(4) The name, qualifications, experience, and job title of each full-time or part-time employee or independent contractor specifically designated by the organization to provide measurement services under the Convention Measurement System and Standard and Dual Regulatory Measurement Systems.

(5) Its tonnage measurement training procedures.

**4      Written Agreement – 46 CFR § 69.27(d)**

If, after reviewing the application, the Administration determines that the organization is qualified to measure and certify U.S. vessels on behalf of the Administration, the organization must enter into a written agreement with the Administration which—

(1) Defines the procedures for administering and implementing the tonnage measurement and certification processes, including the roles and responsibilities of each party;

(2) Outlines the Administration's oversight role;

(3) Prohibits the organization from using an employee or contractor of the organization to measure and certify the tonnage of a vessel if that employee or contractor is acting or has acted as a tonnage consultant for that same vessel; and

(4) Requires the organization to—

  (i) Accept all requests to perform delegated services without discrimination and without regard to the vessel's location, unless prohibited from doing so under the laws of the United States or under the laws of the jurisdiction in which the vessel is located;

  (ii) Physically inspect each vessel before issuing a tonnage certificate;

  (iii) Provide the Administration with current schedules of measurement fees and related charges;

(iv)  Maintain a tonnage measurement file for each U.S. vessel that the organization measures and permit access to the file by any person authorized by the Commandant;

(v)  Permit observer status representation by the Administration at all formal discussions that may take place between the organization and other recognized organizations pertaining to tonnage measurement of U.S. vessels or to the systems under which U.S. vessels are measured;

(vi)  Comply with and apply all laws and regulations relating to tonnage measurement of U.S. vessels within the scope of authority delegated; and

(vii)  Comply with all other provisions, if any, of the written agreement.

# Appendix D[1] of the

## AGREEMENT GOVERNING THE DELEGATION OF
## STATUTORY CERTIFICATION AND SERVICES
## FOR UNITED STATES OF AMERICA FLAG SHIPS between the
## UNITED STATES COAST GUARD and the
## AMERICAN BUREAU OF SHIPPING

Dated ___MAR 0 6 2020___, 2020, with effect from _____, 2020, covering the:

## DELEGATION OF AUTHORITY TO PERFORM SAFETY MANAGEMENT AUDITS
## AND CERTIFICATION FUNCTIONS

**1    Authority – 33 CFR § 96.410**

This subpart applies to all organizations recognized by the Administration under 46 CFR part 8, subpart A and B, who wish to seek authorization to conduct safety management audits and issue relevant international safety certificates under the provisions of the ISM Code and voluntary certificates on behalf of the Administration.

**2    Written Agreement – 33 CFR § 96.460**

(a) The RO will enter into a written agreement with the Administration. This written agreement will specify—

(1) How long the authorization is valid;

(2) Which duties and responsibilities the organization may perform, and which certificates it may issue on behalf of the Administration;

(3) Reports and information the organization must send to the Administration (Commandant (CG-CVC));

(4) Actions the organization must take to renew the agreement when it expires; and

(5) Actions the organization must take if the Administration should revoke its authorization or recognition under 46 CFR part 8.

---

[1] This Appendix is a reproduction of the regulations found in 33 CFR § 96.410, 33 CFR § 96.460, 33 CFR § 96.470, 33 CFR § 96.480, and 33 CFR § 96.490 upon date of signature of the Agreement. The terms "U.S.," "Commandant," and "Coast Guard" have been replaced with the term "Administration," where appropriate. Furthermore, the term "your organization" has been replaced with the term "the RO." These changes have been made for the purpose of maintaining consistent terminology throughout the Agreement and Appendices, and are not intended to change the meaning of the regulation in any way.

**3**      **Termination of the RO's authorization – 33 CFR § 96.470**

At least every 12 months, the Administration evaluates organizations authorized under this subpart. If an organization fails to maintain acceptable standards, the Administration may terminate that organization's authorization, remove the organization from the Administration's list of recognized organizations, and further evaluate the organization's recognition under 46 CFR part 8.

**4**      **Certificates issued by RO's whose authority has been terminated – 33 CFR § 96.480**

Any certificate issued by an organization authorized by the Administration whose authorization is later terminated remains valid until—

(1) Its original expiration date,

(2) The date of the next periodic audit required to maintain the certificate's validity, or

(3) Whichever of paragraphs (a) or (b) occurs first.

**5**      **RO obligations following termination of authorization – 33 CFR § 96.490**

The written agreement by which an organization receives authorization from the Administration places it under certain obligations if the Administration revokes that authorization. The organization agrees to send written notice of its termination to all responsible persons, companies and vessels that have received certificates from the organization. In that notice, the organization must include—

(1) A written statement explaining why the organization's authorization was terminated by the Administration;

(2) An explanation of the status of issued certificates;

(3) A current list of organizations authorized by the Administration to conduct safety management audits; and

(4) A statement of what the companies and vessels must do to have their safety management systems transferred to another organization authorized to act on behalf of the Administration.