**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CONSTANCE MILLARD and GERALD KRELL, Individually and as Representatives of the Estate of Jason Krell, Deceased; MICHELLE MARTIN, as tutrix and next friend of A.P., E.P., and M.S., minors, and as Representative of the Estate of Quinon Pitre, *et al.* | § § § § § § § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. |
| - against-. | § | 4:24-cv-1694 |
| | § | |
| AMERICAN BUREAU OF SHIPPING, ABS GROUP OF COMPANIES, INC., ABSG ABSG CONSULTING INC., ABS QUALITY EVALUATIONS, INC., and ABS GROUP | § § § § | ADMIRALTY CASE |
| | § | |
| Defendants. | § | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS'
SUPPLEMENTAL BRIEF REGARDING MOTION TO REMAND**

TO THE HONORABLE GEORGE C. HANKS, JR.:

COME NOW Defendants in the above-captioned matter to file their Response to Plaintiffs' Supplemental Brief (ECF Doc. No. 53) in Support of Plaintiffs' Motion to Remand (Doc. No. 11).  For the additional reasons set forth below, Defendants respectfully ask the Court to deny Plaintiffs' motion to remand this case to the Texas state court.

**Table of Contents**

|  |  | **Page** |
|---|---|---|
| NATURE AND STATE OF PROCEEDING | ……………….. | 1 |
| STATEMENT OF ISSUES | ……………….. | 2 |
| STATEMENT OF ARGUMENT | ……………….. | 2 |
| ARGUMENT | ……………….. | 3 |
| A. Defendants Have a Colorable Federal Defense | ………. | 3 |
| B. Plaintiff's Allegations of Fault Are Unquestionably Related to ABS's Work Performed on Behalf of the USCG | ……………….. | 9 |
| C. The Entire Case Was Properly Removed Regardless of the Inclusion of Claims and Parties that May Be Outside of Federal Officer Removal | ……………….. | 14 |
| CONCLUSION | ……………….. | 15 |

i

## NATURE AND STAGE OF PROCEEDING

Plaintiffs filed claims for personal injury and wrongful death arising from the capsizing of the liftboat *SEACOR Power* ("the Vessel"). Plaintiffs specifically allege in their pleadings that the U.S. Coast Guard ("USCG") delegated authority to Defendants[1] for verifying that the Vessel was in compliance with international conventions and United States regulations; that the Defendants undertook surveys, and audits of the Vessel on behalf of the USCG; and that the Defendants committed errors or omissions during these inspections that contributed to the casualty. (First Amended Petition, ECF Doc. No. 1-2 at 14-31, ("FAP") ¶¶ 5.6-5.7, 5.12.) Defendants removed this action from Texas state court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). By Order dated July 18, 2024, Judge Hittner granted Plaintiffs' motion to remand to state court upon a finding that ABS did not act pursuant to a federal officer's direction. (ECF Doc. No. 18.) After the denial of Defendants' motion for reconsideration (ECF Doc. Nos. 20, 22), the Court of Appeals reversed, holding that "ABS was 'acting under' the direction of the USCG for purposes of the federal officer removal statute when the events underlying this appeal occurred" (ECF Doc. No. 27 at 7-8), and remanded for determination of the remaining elements of the federal officer removal statute.

---

[1]Plaintiffs' pleadings do not distinguish between or among any of the five named Defendants but rather assert all allegations against the Defendants as the collective "ABS". As set out in Point C below, whether only one or all of the Defendants played any role in connection with the Vessel on behalf of the USCG, or even should properly be a defendant, is irrelevant for purposes of the Defendants' removal of this Action. Defendants will adopt Plaintiffs' use of the collective "ABS" herein except where certain of the Defendants are addressed separately in Point C.

**STATEMENT OF ISSUES**

The remaining elements of the federal officer removal statute to be addressed by this Court are: (1) whether the charged conduct relates to an act pursuant to the direction of a federal officer or agency; and (2) whether ABS can assert a colorable federal defense. *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020).

**SUMMARY OF ARGUMENT**

The Court of Appeals already has determined that ABS was "acting under" the USCG in performing inspections of the Vessel to assess compliance with various statutes, regulations and international conventions, and ABS satisfies the remaining requirements for removal. ABS easily clears the modest hurdle for establishing a colorable federal defense, as it seeks the benefit of the *identical* discretionary immunity defense that unquestionably would be available to the USCG for inspections performed by USCG personnel. The strength of ABS's material and non-frivolous immunity defense is not to be litigated at the removal stage, as the defense must be adjudicated in the federal forum on the full merits of the case. The Plaintiffs' own pleadings establish that their claims are based upon the inspections ABS performed for the USCG, thereby satisfying the "related to" requirement of federal office removal. Finally, regardless of whether certain Defendants may not have acted on behalf of the USCG, or whether some of the Plaintiffs' claims implicate work ABS performed beyond its work for the USCG, the entire case is removable as long as at least *one* defendant is entitled to removal and at least *one* of Plaintiffs' claims implicates ABS's work for the USCG.

2

## ARGUMENT

### A.  Defendants Have a Colorable Federal Defense

To survive a motion to remand, a defendant need only establish that it has a "colorable" federal defense to a plaintiff's claims.  A defendant does not have to "prove" that the defense is applicable or even "clearly sustainable" at the removal stage, only that it is colorable or plausible. *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296-97 (5th Cir. 2020); *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398-400 (5th Cir. 1998).  "[A]n asserted federal defense is colorable unless it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or 'wholly insubstantial and frivolous'." *Latiolais*, 951 F.3d at 296-97 (quoting *Zeringue v. Crane Co.*, 846 F.3d 785, 790 (5th Cir. 2017); *Bell v. Thornburg*, 743 F.3d 84, 89-91 (5th Cir. 2014)).

Defendants are only required to show a "colorable" federal immunity defense at the removal stage because the full scope and validity of the defense is to be decided on the full merits by a federal court.  As the Court of Appeals held in *Winters*:

> [O]ne of the most important functions of this right of removal is to allow a federal court to determine the validity of an asserted official immunity defense. Removal pursuant to § 1442(a)(1) is thus meant to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties. Furthermore, this right is not to be frustrated by a grudgingly narrow interpretation of the removal statute.

149 F.3d at 397 (citations and internal quotations omitted).  Therefore, it is the role of the federal court, and not the state court, to assess the scope of the discretionary function immunity defense invoked by Defendants.  The fact that Plaintiffs' claims, which seek recovery for a casualty in the navigable waters of the Gulf of Mexico, are undisputedly

3

governed by federal maritime law (rather than any state law) (FAP ¶ 3.1; ECF Doc. No. 9 ¶ 3.1.), only underscores the propriety of the full adjudication of the matter in this court.

Plaintiffs' entirely unsupported contentions that ABS cannot satisfy the requirements for a colorable federal defense are just that: contentions.  As the Fifth Circuit has made clear, the strengths and merits of the federal defense are not to be litigated at the removal stage.  Whether Plaintiffs ultimately can establish that "ABS performed deficient inspections, surveys, …" on the Vessel (ECF Doc. No. 53 at 7) are issues that the finder of fact may be called upon to determine, but such assertions are irrelevant to removal.  ABS's "federal defense need not prevail at the merits stage to warrant removal—it need only be material and non-frivolous." *St. Charles Surgical Hosp., L.L.C. v. Louisiana Health Svce. & Indem. Co.*, 935 F.3d 352, 357 (5th Cir. 2019).

The basis of ABS's federal immunity defense is straightforward.  Plaintiffs contend that ABS negligently performed inspections on the Vessel that somehow caused and/or contributed to the Vessel's capsizing in 2021.  They also affirmatively allege that ABS performed surveys "on behalf of the Coast Guard, including surveys verifying compliance with" various international conventions, and that "ABS was delegated responsibility by the United States for verifying that SEACOR Marine and the *SEACOR Power* were in compliance with the ISM Code and US regulations."  (FAP ¶ 5.6-5.7.)[2] Further, as the Court of Appeals recognized, when ABS performs delegated functions on

---

[2] As set out in further detail in Point B below, ABS' work in connection with ISM issues is purely a statutory work on behalf of the USCG, not a classification activity.  (O'Donnel Decl. (ECF Doc. No. 12-4) ¶ 10).

behalf of the USCG, those functions will be accepted as functions performed by the USCG.  (ECF Doc. No.  27 at 6; 46 C.F.R. § 8.130(a).)

There can be no doubt that if the USCG itself had performed the inspections allegedly at issue, instead of designating ABS to do so in its place, the USCG and its personnel would have immunity for any tort claims based on such inspections.  As the Fifth Circuit made clear in *Wiggins v. United States*, 799 F.2d 962, 966 (5th Cir. 1986), the federal government is immune from claims in admiralty based on the exercise of governmental discretion.  This discretionary immunity applies to the USCG for claims based upon negligent safety inspections of vessels by USCG personnel.  *Fiedler v. United States*, 165 F.4th 1310, 1319-20 (9th Cir. 2026); *Cassens v. St. Louis River Cruise Lines*, 44 F.3d 508, 515 (7th Cir. 1995).  As the Ninth Circuit stated in *Fiedler*, "Coast Guard inspections are textbook discretionary judgments rooted in public policy considerations. Inspectors are instructed to interpret regulations 'to avoid disruption and undue expense to industry.'"  165 F.4th 1320 (citing 46 U.S.C. § 3305).

ABS has asserted *identical* defenses in this case that would be available to USCG personnel for the same activity.  (ECF Doc. No. 9 ¶ 12.)  As agent acting for the USCG under due statutory authority, ABS executes the will of the government, such that the statutory immunity should be extended to ABS. *See*, *e.g.*, *Boyle v. United Technologies Corp.*, 487 U.S. 500, 506 (1988); *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 20-21 (1940); *Taylor Energy Co., LLC v. Luttrell*, 3 F.4th 172 (5th Cir. 2021).  Where the federal government has validly conferred authority on a contractor who executes the "will" of the government, the government's immunity extends to the government's

contractor.  *Boyle*, 487 U.S. at 506 (immunity is available to manufacturers that manufacture to government specifications); *Yearsley*, 309 U.S. at 20-21 (immunity for construction contractor building dikes for the Army Corps).  The Court held in *Yearsley* that if "[t]he authority to carry out the project was validly conferred…there is no liability on the part of the contractor for executing [the Government's] will." 309 U.S. at 20-21. An agent is liable under *Yearsley* only if "he exceeded his authority, or that [the authority] was not validly conferred." *Id.* at 21.  The latter exception is foreclosed to Plaintiffs, as the Court of Appeals has already determined in this case that ABS was acting pursuant to authority validly conferred by the USCG.  (ECF Doc No. 27 at 2-3, 6.)

The Supreme Court's recent decision in *Hencely v. Fluor Corp*, 146 S. Ct. 1086 (2026), does not remotely carry the weight that Plaintiffs contend in evaluating whether a defendant has a colorable federal defense to support removal.  That decision did not involve federal officer removal at all. The question instead was whether a military contractor has immunity for any negligence it may have committed in a war zone, and whether such immunity preempts an injured plaintiff's state law claims.  As the Court's decision stated, it had granted *certiorari* "to decide whether a state-law suit premised on a military contractor's activities in a war zone is preempted even when the contractor was not required or authorized to take the action at issue."  146 S. Ct. at 1093.  Plaintiffs' claims in this case are based upon federal maritime law rather than substantive state law, so no preemption concerns exist.  The Court did examine its prior decision in *Boyle*, which had "addressed 'a special circumstance' in which the contractor has a defense because 'the government has directed a contractor to do the very thing that is the subject

of the claim.'" *Id.* at 1095.  The Court concluded that the derivative immunity allowed

under *Boyle* did not apply to the defendant in that case, because the plaintiff had sued

"for conduct that, we assume (as the Fourth Circuit did), was not authorized by, but was

even contrary to, federal instructions."[3]  *Id.*  Plaintiffs in this case cannot contend at the

removal stage that ABS acted contrary to any federal instructions or directives.

In the present case, Plaintiffs allege acts and omissions similar to what the

plaintiffs alleged in *Fiedler*—a case in which the Ninth Circuit allowed immunity for

discretionary actions taken by USCG inspectors. The *Fiedler* plaintiffs argued that the

USCG "was negligent in authorizing the [Vessel] to operate despite various purported

safety violations." 165 F.4th at 1314.  They also alleged that the USCG "had a duty to

identify and compel correction of alleged [] hazards." *Id* at 1319.  Similarly, in this case,

Plaintiffs contend that "ABS failed to perform adequate inspections, audits, reviews, and

classification of the *SEACOR Power*, and rubber-stamped the vessel, its components, its

operations manual, its safety policies, and its safety management system when it was not

safe to operate," and that "ABS inspected and approved the vessel for use despite obvious

dangerous and unsafe characteristics of the vessel." (FAP ¶ 5.12, 6.1.)  As the

Recognized Organization designated by the USCG to perform many of the duties listed in

Paragraph 6.3 of the FAP, the actions of ABS that form the bases of Plaintiffs' claims are

precisely the type of discretionary actions that the discretionary immunity defense is

intended to cover.

---

[3] The defendant in *Hencely* did "not dispute that military officials found it to have failed in its contractual obligations."  *Id.*

That ABS may have relied on its own rules when performing classification work (aside from USCG delegated functions) does not affect removal. ABS may wear two hats when it performs work relating to certain vessels. When ABS inspects or certifies vessels on behalf of the USCG, it employs the applicable statutes, international conventions and/or federal regulations for which it is evaluating compliance. When ABS also happens to be the classification society for the vessel, ABS will employ its own classification rules to evaluate the vessel for classification purposes. To the extent that the statutory and classification requirements may overlap, ABS may perform the activities simultaneously, applying the separate regulatory schemes or class rules as applicable. Plaintiffs' repeated, unsupported assertions that the USCG "did not direct ABS to make the inspection judgments Plaintiffs challenge" and that "ABS exercised its own judgment under its own rules" (ECF Doc. No. 53 at 3-4) are no more accurate now than they were in their initial motion for remand.

Even if the USCG did not exert complete control over ABS's inspections and certifications, as Plaintiffs contend, removal would still be proper. As the Fifth Circuit made clear in *Taylor Energy Co.*, the government agent's retention of decision-making authority does not defeat the immunity under *Yearsley*:

> *Yearsley* did not focus on whether the Government designed the river dikes that led to the plaintiffs' injuries, but whether the contractor's work was "done pursuant to a contract with the United States Government, and under the direction of the Secretary of War and the supervision of the Chief of Engineers of the United States . . . ." 309 U.S. at 19. The appropriate inquiry is whether Couvillion adhered to the Government's instructions as described in the contract documents.

3 F.4th at 176.

8

The extensive regulatory scheme under which ABS performs its inspections and certifications, however, provides ample direction by the USCG to ABS in carrying out the statutory, flag state, and/or international convention inspections, reviews, and audits required by U.S. law.  In addition, as Section 5 of the USCG-ABS Agreement makes clear, the USCG retains ultimate authority to interpret the applicable conventions, statutes, and regulations that ABS executes under the USCG's delegation, and any deviations from those regulatory structures can be approved only by the USCG.  (ECF Doc. No. 11-4 at 4-5.)  Meanwhile, Plaintiffs have no support whatsoever for the baseless accusations that ABS did not heed the requirements of its agreement with the USCG.

**B. Plaintiffs' Allegations of Fault Are Unquestionably Related to ABS's Work Performed on Behalf of the USCG**

The Supreme Court recently clarified the scope of the "related to" requirement for federal officer removal and reaffirmed that it is to be given a broad meaning—consistent with the Congressional intent that cases against parties acting under federal officers with colorable federal defenses be decided in federal courts.  *Chevron USA Inc. v. Plaquemines Parish*, 146 S. Ct. 1052, 1060 (2026).  The Court unanimously reversed a decision of the Fifth Circuit, relied on by Plaintiffs in their earlier removal briefing (ECF Doc. No. 21 at 4-5), which had concluded that environmental claims arising from crude oil production by Chevron were insufficiently related to Chevron's contractual obligations to provide the War Department with refined aviation fuel during World War II.  The Court concluded that "Chevron's wartime crude-oil production was closely

9

connected to its wartime avgas refining, so the parish's suit challenging that crude-oil production relates to that refining." 146 S. Ct. at 1060. The Court explained:

> ***The phrase "relating to" sweeps broadly***. It means "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." One thing can relate to another even if the connection is "indirect." One thing can relate to another even if it was not specifically designed to affect it. And, one thing can relate to another even without a "strict causal relationship." ***Accordingly, a removing defendant need not show that his federal duties specifically required or strictly caused the challenged conduct***.
> The ordinary meaning of "relating to," however, is not so broad that it is meaningless. To be sure, in a literalist sense, everything is related to everything else. But, generally in statutory interpretation, it is the ordinary, not literalist, meaning that is the better one.
> The ordinary understanding of "relating to" requires a connection that is not "tenuous, remote, or peripheral." …

*Id.* at 1060-61 (internal citations omitted) (emphasis added).

The Court determined that "Chevron's case fits comfortably within the meaning of a suit 'relating to' the performance of federal duties." *Id.* at 1061. In doing so, the Court rejected the holding of the Fifth Circuit and the purported rule argued by the Plaintiffs herein, namely that just because the government did not specify "how" Chevron would carry out all its duties, claims arising from actions not dictated in the parties' agreement would defeat removal. Instead, the Court concluded that "the ordinary meaning of 'relating to' does not require the defendant to show that his federal duties specifically invited his challenged conduct." *Id.* at 1062. Similarly in this case, to establish its right to removal, ABS is not required to show that every error or omission that Plaintiffs may allege was directed by the federal government. Instead, ABS is obligated to show that its

10

inspections and certifications undertaken on behalf of the USCG "stand in some relation" to the Plaintiff's claims. *Id.* at 1060.

As the Fifth Circuit made clear in *Latiolais v. Huntington-Ingalls, Inc.*, the allegations in a plaintiff's complaint should be assessed and federal officer removal upheld where a plaintiff's allegations satisfy any of the requirements for removal, including whether the alleged errors or omissions by the defendants are related to their actions on behalf of a federal officer. *See* 951 F.3d 286, 296 (5th Cir. 2020) (plaintiff's allegations of failure to warn and that the defendant had failed to adequately prevent asbestos exposure were sufficiently "connected" to the installation of asbestos in naval vessels). Here, Plaintiffs allege not only that ABS completed surveys on behalf of the USCG to verify the vessel's compliance with international conventions, but that ABS did so pursuant to a delegation of responsibility to perform inspections that the United States was required to perform as the "flag state." (FAP ¶¶ 5.5-5.7.) Plaintiffs further allege that, as part of this "flag state" authority, ABS inspected the Vessel to verify compliance with the IMO Safety Management Code and with "US regulations." (FAP ¶ 5.7.) As the Fifth Circuit noted (ECF Doc. No. 27 at 3), Plaintiffs' FAP cites the National Transportation Safety Board to support their allegation that the "the probable cause of the capsizing of the *SEACOR Power* was a loss of stability that occurred when the vessel was struck by severe thunderstorm winds." (FAP ¶ 5.3.) While that report ultimately will be inadmissible at trial (49 U.S.C. § 1154(b)), to the extent it forms the basis of the Plaintiffs' liability theories, it directly implicates ABS' statutory work for the USCG rather than its classification work. Indeed, the central matters of vessel stability, load

11

lines, and safety management systems that the Plaintiffs emphasize as the foundation of their claims (FAP ¶¶ 5.3, 5.6-5.8, 5.10, 5.12, 6.1, 6.3), are all encompassed by the statutory surveys and reviews performed by ABS as a delegated agent of the federal government.  (ECF Doc. No. 12-5 at 3-5 (Gruber Decl. ¶¶ 6-10); ECF Doc. No. 12-4 at 3-7 (O'Donnell Decl. ¶¶ 5-12).)

Before the Court is the Agreement between the USCG and ABS (ECF Doc. No. 53-1), which Plaintiffs refer to as a "Memorandum of Understanding" and have described as "the federal directive" of authority to ABS (ECF Doc. 11-4 at 5).  However, this document serves as only part of the delegation of authority to ABS.  Also before the Court is an extensive list of statutes, regulations, and Navigation and Vessel Inspection Circulars (NVICs) that establish the broad scope of authority delegated by the USCG to ABS.[4]  When these statutes and regulations are read together with the allegations in the Plaintiffs' pleadings, which affirmatively state that ABS *was* engaged in the execution of federal regulations, federal statutes, and international conventions on behalf of the USCG when it allegedly committed acts or omissions giving rise to the Plaintiffs' claims for relief, the Court may easily conclude that the broad meaning of "related to" and/or "connected or associated with" encompasses ABS's statutory inspections for the USCG.

The Eleventh Circuit's decision in *Magnin v. Teledyne Continental Motors*, 91 F.3d 1424 (11th Cir. 1996), is particularly instructive. *Mangin* was a wrongful death case brought against aircraft engine manufacturer Teledyne and one if its employees,

---

[4] *See* ECF Doc. no. 12 at ECF pages 16-19 and 22-23.

involving a parallel aircraft inspection program.  Whereas ABS is a Recognized Organization under the USCG's vessel inspection regime, the Teledyne employee in *Magnin* was a Designated Manufacturing Inspection Representative (DMIR), designated by the FAA to issue an Expert Certificate of Airworthiness on behalf of the FAA.  The Eleventh Circuit emphasized that the plaintiff's complaint specifically had alleged that the employee defendant was a DMIR and that at least one count alleged the negligent issuance of the Certificate of Airworthiness, which the employee defendant had signed "in his capacity as an agent of the FAA, *i.e.* as a DMIR, and the complaint itself pleads that connection."  91 F.3d at 1429.  The court then cited the statute permitting the FAA's delegation of authority to the DMR to issue safety certificates for aircraft before concluding that the employee had demonstrated not only that he acted under a federal officer,[5] but that he also had a colorable federal defense.  *See id.* at 1428 ("The extent to which federal law imposes certain requirements upon Smith as a DMIR, and whether it may afford him any corresponding protection as a DMIR from tort liability, are issues of federal law.")  The Eleventh Circuit also rejected the plaintiff's attempt to evade the allegations in his own complaint, concluding that "we cannot accept Magnin's post-hoc characterization of the complaint. The complaint is concise, and it would be unnatural to read the DMIR averments as unnecessary to any claim." *Id.* at 1429.

---

[5] The court noted that the extent to which the plaintiff might claim the employee deviated from his official duties would not defeat removal jurisdiction, but was an issue that the federal court, rather than a state court, should decide when adjudicating the case on the merits.  91 F.3d at 1428.

The identical analysis applies to ABS's analogous work for the USCG. Plaintiffs have specifically alleged in their pleadings that ABS was designated by the USCG to inspect vessels on behalf of the U.S. government. Plaintiffs cannot claim such allegations are immaterial to their claims that ABS failed to properly inspect the Vessel in this case. Indeed, it would be anomalous to conclude that, while a DMIR acting on behalf of the FAA can avail itself of the federal office removal statute, a Recognized Organization designated to act on behalf of the USCG may not similarly seek a federal forum.

## C. The Entire Case Was Properly Removed Regardless of the Inclusion of Claims and Parties that May Be Outside of Federal Officer Removal

Plaintiffs suggest that their claims against Defendants ABS Group of Companies, Inc., ABSG Consulting, Inc., ABS Quality Evaluations, Inc. and ABS Group, LLC (collectively "the Group Defendants") should be remanded even if the claims against American Bureau of Shipping remain in this Court.[6] This argument inexcusably overlooks the undisputed case law addressing removal when not all defendants are federal officers. As the Fifth Circuit has stated, "it is settled that the filing of a petition for removal by a single federal officer under 28 U.S.C. § 1442(a)(1) removes the entire case to the federal court," regardless of whether the other defendants even join in the removal. *Fowler v. Southern Bell Telephone & Telegraph Co.*, 343 F.2d 150, 152 (5th

---

[6] Plaintiffs' own submissions herein demonstrate that the Group Defendants had no involvement with the vessel *SEACOR Power*, quoting interrogatory responses at length (ECF Doc. No. 53 at 13-15) and offering no contrary evidence, even after ABS's production of nearly 3,500 pages of documents. Accordingly, Plaintiffs' brief highlights that they have no good-faith basis to maintain this action against the Group Defendants. ABS reserves the right to seek appropriate relief for Plaintiffs' failure to abide by the basic precepts of Rule 11(b).

Cir. 1965) (citing *Allman v. Hanley*, 302 F.2d 559, 562 (5th Cir. 1962)). Courts in other circuits agree that the entire case remains subject to removal without severance of claims. *See*, *e.g.*, *District of Columbia v. Merit Systems Protection Board*, 762 F.2d 129, 132-33 (D.C. Cir. 1985) (when federal parties remove an action under section 1442(a)(1), the district court assumes jurisdiction over all the claims and parties in the case regardless of whether the federal court could have assumed original jurisdiction over the suit); *Bradford v. Harding*, 284 F.2d 307, 309-10 (2d Cir. 1960) (where only one defendant was entitled to remove under Section 1442, the entire case was properly removed).

The same holds true for any claims that may arise from actions by ABS that might not be deemed "related to" the work of ABS undertaken for the USGC. So long as one of Plaintiffs' claims implicates work performed by ABS on behalf of the USCG, then "removal of the entire case is appropriate." *Savoie v. Huntington Ingalls, Inc.*, 817 F.3d 457, 463 (5th Cir. 2016) (concluding that the defendant shipyard had satisfied the more stringent causal nexus standard even though "most" of the plaintiffs' allegations of fault involved ordinary negligence separate from government-imposed conduct).

## CONCLUSION

Accordingly, Defendants respectfully request that this Court deny the Motion to Remand this case to the Texas state court in its entirety.

Respectfully submitted,

Dated: June 1, 2026

HILL RIVKINS LLP
Attorneys for Defendants

15

*American Bureau of Shipping; abs Group of Companies, Inc.; ABSG Consulting, Inc.; ABS Quality Evaluations, Inc.; and ABS Group*

/s/ *John J. Sullivan*

John J. Sullivan
SDTX I.D. No.: 1531846
Brian P.R. Eisenhower
S.D. Tex. ID No. 3888867


HILL RIVKINS LLP
1000 N. Post Oak Rd., Suite 220
Houston, Texas 77055
Tel.:   713-222-1515
Fax:   713-222-1359
Email: jsullivan@hillrivkins.com
          beisenhower@hillrivkins.com


James M. Kimbell
SDTX ID No.: 1627
CLARK HILL PLC
1000 Louisiana Street, Suite 2800,
Houston, Texas 77002
Tel.:   713-951-5665
Fax:   832-397-3544
Email: jkimbell@clarkhill.com

16